478 So.2d 1214 (1985)
Elaine HARDIN, et al.
v.
Mercedes WILLIAMS.
No. 85-C-0961.
Supreme Court of Louisiana.
December 2, 1985.
Allen Myles, Plaquemine, for plaintiff-applicant.
Brady Louis Jones, III, Curtis A. Calloway, Lacour & Calloway, Baton Rouge, for defendant-respondent.
*1215 WATSON, Justice.
In dispute is the validity of a donation inter vivos of immovable property. Irene Bowie attempted to donate a house and lot in Plaquemines, Louisiana, to her niece, Elaine Hardin. The trial court held that the Act of Donation complied with LSA-C.C. art. 1536, and the Court of Appeal reversed. Hardin v. Williams, 468 So.2d 1302 (La.App. 1 Cir., 1985). A writ was granted to review the judgment. 470 So.2d 882 (La.,1985).

FACTS
On February 6, 1981,[1] Irene Bowie and her niece, Elaine Hardin, went to attorney Allen J. Myles' office to execute an Act of Donation. Bowie donated a house and lot on Haase Street in Plaquemines, Louisiana, to Hardin. Janice Myles and James Gales were present to witness the donation as required by LSA-C.C. art. 1536. Myles, not commissioned as a notary at the time of the donation, asked Houston C. Gascon, III, an attorney and notary, to notarize the Act. The Act of Donation and the Acceptance were signed by the donor, the donee, and two witnesses in the presence of Myles. Myles took the documents to Gascon in the next room where the Act of Donation and the Formal Acceptance were signed and notarized by Gascon.
On March 9, 1981, Bowie executed a Revocation of the Act of Donation in the presence of a notary and two witnesses, declaring the donation of February 6, 1981, invalid. Then, through a testamentary disposition dated September 10, 1981, she gave the property described in the donation to Mercedes Williams, Bowie's niece and Hardin's sister. Prior to Mrs. Bowie's death on January 30, 1983, Williams moved into the Haase Street home where she has remained.
The trial court held that the notary's close proximity was sufficient for a valid donation and, consequently, the donation was irrevocable. The Court of Appeal, reversing the trial court, held the Act of Donation was not executed in accordance with LSA-C.C. art. 1536 and lacked the requirements of an authentic act.[2]

ISSUE
Does the meaning of the phrase "before a notary public in the presence of two witnesses," require the notary to observe the signing of a document in order for it to qualify as an authentic act?

LAW
A donation inter vivos of immovable property must be passed before a notary public and two witnesses. Brittain v. Richardson, 3 Rob. 78 (1842). This requirement is set forth under the terms of LSA-C.C. art. 1536, as follows:
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
The present LSA-C.C. art. 1536 is the same article as that under the 1870 Code. LSA-C.C. art. 1536 of the 1870 Code was taken from LSA-C.C. art. 1523 of the 1825 Code.[3] Thus, the requirement that a donation of immovable property shall be passed before a notary and two witnesses has a long tradition in the Civil Code. In fact, the notary public requirement can be traced as far back as Projet du Gouvernement (1800), Book III, Title IX, Art. 46.[4]
*1216 Plaintiff, arguing that the formalities of donation were met, claims that, following an introduction to the parties, Gascon stood in the doorway as the parties signed the documents. However, this claim is totally unsupported by Gascon, the notary public. At the trial, Gascon testified as follows:
"Q. Mr. Gascon, you notarized both the donation and, I believe, the formal act of acceptance of the inter vivos donation, which is the third page of plaintiff exhibit number two?
"A. Yes, I did.
"Q. The next few questions I ask are justI'm just trying to find out about the facts surrounding your notarizing of this document. Would you tell the Court whether you saw Mrs. Irene Bowie sign her name, or whether she signed her name in your presence?
"A. I did not actually see Miss Bowie place her signature on the document that I notarized. To further explain, I received a call from Mr. Allen Myles, your opposing counsel, regarding a desire, his desire for me to help him notarize something because at that time, I don't think he was a notary, or his commission had not come in. I don't remember the specific date or time, other than it was February the sixth, on the document, but I told him I would stop by his office to notarize whatever document he had for me. I didn't see anyone there besides Mr. Myles, but I do know that he had someone in his office. I was lead to believe, or I assumed, that the person was Miss Bowie.
"Q. Did you see Mr. Gales sign his signature?
"A. No, I did not.
"Q. Did you see any of the other witnesses sign their names?
"A. No, I did not. There were several people in his office at that time. I didn't go to the back because I was in a rush. He brought the document out and I notarized it for him and then asked him if there was anything else, he said no, and I left." (Tr., pp. 60-61).
It is clear from Gascon's testimony that he remained in a separate room; he did not meet any of the parties involved in the transaction; and, he did not see the parties sign the document.
There is no question the act was passed in the presence of two witnesses, but it was not passed before a notary public. Tweedel v. Brasseaux, 433 So.2d 133 (La.,1983) held a donation inter vivos of immovable property was valid, and stated in part:
"George T. Tweedel and his wife, Lillian, [donors] signed the instruments before two witnesses and a notary public as required by the article. The documents constitute authentic acts." Tweedel v. Brasseaux, supra, at 137.
LSA-C.C. art. 2234 requires that the notary and witnesses be present when each contracting party signs the act and that the notary and witnesses also sign the act. Heyl v. Heyl, 445 So.2d 88 (La.App. 2 Cir. 1984), writ den. 446 So.2d 1228. Gascon did not have to sign at the same time as the other parties, but he did have to be present when the contracting parties signed the act. Rittiner v. Sinclair, 374 So.2d 680, 685 (La.App. 4 Cir.1978).
Even though the donation was Gascon's sole purpose for being at Myles' office, the fact that he was not in the presence of the parties when they signed the act prevents the document from being passed before a notary, and therefore, prevents the document from constituting an authentic act. A donation inter vivos of immovable property not passed before a notary and two witnesses, is not authentic and is therefore invalid and null. Spanier v. Devoe, 52 La.Ann. 581, 27 So. 174 (La.,1900). A document constituting an authentic act must comply with LSA-C.C. art. 2234, which states in pertinent part:
"The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses...." (emphasis added)
*1217 Plainly, the donation was not valid under LSA-C.C. art. 1536, and is not an authentic act under LSA-C.C. art. 2234. A defective authentic act becomes a private writing as long as it is signed by the parties.[5]Hood v. Segrest, 12 Rob. 210 (La.,1845). A donation of immovable property by act under private signature is null. Sarpy v. Sarpy, 354 So.2d 572 (La.App. 4 Cir.,1977), writ den. 356 So.2d 436 (La.,1978); Gabert v. St. Tammany Yacht Club, 166 La. 57, 116 So. 667 (La.,1928). Therefore, since the instrument constituted only an act under private signature, it was not a valid and irrevocable donation. Bowie had the right to change her mind and will the house and lot to her other niece, Williams.

CONCLUSION
Since the attempted donation was not "passed before a notary", the Court of Appeal judgment reversing the trial court is affirmed.
AFFIRMED.
DENNIS, J., concurs.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The notary was present in the suite of two very small offices for the sole purpose of notarizing the document. He personally knew the attorney and two of the other three persons in the attorney's office. The donor and the two witnesses signed the document in the attorney's office while the notary was present in the outer office, awaiting the completion of the signing. The notary agreed that "[t]he notarization of the document occurred all in a continuance [sic] transaction with people signing and people talking". These circumstances are sufficient to warrant the conclusion that the act of donation was "passed before a notary public and two witnesses" in compliance with La.C.C. Art. 1536.
NOTES
[1] The trial court erroneously noted the donation date as February 9, 1981.
[2] LSA-C.C. art. 2234 (now LSA-C.C. art. 1833).
[3] Prior to its amendment, LSA-C.C. 1523 read as follows:

"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immoveable property, of slaves or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
[4] Projet du Gouvernement (1800), Book III, Title IX, Art. 46 read as follows:

"All acts containing a donation inter vivos, must be passed before a notary, in the usual form of contracts, and record of it must remain."
[5] LSA-C.C. art. 2235 provides:

"An act which is not authentic, through the incompetence or the incapacity of the officer, or through a defect of form, avails as a private writing, if it be signed by the parties."