556 So.2d 228 (1990)
Leola BONNETT, et al., Plaintiffs-Appellees,
v.
Nancy Louise MIZE, et al., Defendants-Appellants.
No. 21086-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Writ Denied April 6, 1990.
*229 Hunter, Scott, Blue, Johnson & Ross by James E. Ross, Jr., Monroe, for defendants-appellants, Nancy Louise Mize, Milton Mize, Jr., Donald Wayne Mize, and Bonnie Lou Mize.
John S.C. Massey, West Monroe, for plaintiffs-appellees, Leola Mize Bonnett, Idell Mize Cotton, Mary Marie Mize Eady, and Eunice Virginia Mize Wilbanks.
Before JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This civil appeal arises out of the district court's annulment of two simulated sales of immovable property and the rendition of a money judgment against appellants, the widow and heirs of the vendee, Milton James Mize. We reverse in part, amend in part, and affirm in all other regards.

FACTS
In 1977, the Social Security Administration advised James Albert Mize and Mary Talbird Mize (decedents) that their social security benefits were in jeopardy because of significant land holdings. Mrs. Mize owned a 40-acre tract of separate property and the couple owned a 60-acre tract of community property which served as their homestead.
On May 6, 1977, Mrs. Mize executed a sale document wherein she "sold" her 40 acres of separate property to her son, Milton James Mize. It is undisputed that no consideration was ever paid for the tract of land. Contemporaneously with the execution of the simulated sale document, Mrs. Mize executed a counter letter wherein she donated the same tract of land to Milton Mize, reciting the love and affection she held for her son as the consideration for the donation.
On July 7, 1977, the decedents executed a sale document wherein they "sold" the 60 acres of community property to Milton James Mize and his wife, Nancy Louise Mize. Once again, no consideration was paid. And again, a counter letter was executed contemporaneously with the sale wherein the decedents attempted to donate the 60 acres to Milton and Nancy Mize.
Some time after these two transactions, Milton Mize sold the 40-acre tract donated to him by his mother for $34,000. Thereafter, Milton and Nancy Mize executed a mineral lease over the 60 acres and received over $90,000 in lease and royalty payments over several years.
*230 Following the death of their elderly parents, the siblings (appellees) of Milton Mize (now deceased) approached Nancy Mize, his widow, regarding a division of the 60 acres. There is some dispute as to what discussion or agreements may have transpired, but negotiations reached a standstill when Nancy Mize refused to agree to the proposed division. Her deceased husband's siblings then brought suit against her and the children of her marriage with Milton Mize (appellants), seeking to annul the two transactions and seeking the recovery of the monies received by Milton and Nancy Mize in the sale of the 40 acres and the lease of the 60 acres.
Following extensive discovery and trial on the merits, the district court ruled in favor of the appellees, annulling the two transactions and ordering appellants to pay the administratrix of the decedents' estates $128,046.68 for those monies received from the sale of the 40-acre tract and the lease of the 60-acre tract.
Appellants now bring this appeal urging a reversal or modification of the district court judgment.

AFFIRMATIVE DEFENSE
In their first argument, appellants contend that the district court erred in not permitting them to amend their answer to raise the affirmative defense of donation to plaintiffs' petition to set aside the sales.
Appellants' Second Supplemental Answer, filed on the day of trial, alleges that the sales which are the subject of appellees' lawsuit were valid donations. Upon objection, the trial court disallowed this filing. Appellees argue that they were not prepared to defend such a claim and that to permit such a pleading to be filed would have constituted an abuse of discretion.
Appellees' original petition, filed almost a year before trial, alleges in part that the transactions "are invalid and should be set aside and declared null and void ... [because] said deeds are simulations or donations in disguise impinging on plaintiffs' legitime as forced heirs."
A defendant's answer must set forth any matter constituting an affirmative defense. LSA-C.C.P. Art. 1003, 1005. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Webster v. Rushing, 316 So.2d 111 (La.1975); Keller v. Amedeo, 512 So.2d 385 (La.1987). The new matter raised must be one not raised by plaintiff's petition. Mashburn Agency, Inc. v. Universal Engineering & Supply, Inc., 451 So.2d 113 (La.App. 3rd Cir. 1984). The general purpose of article 1005 in requiring that certain defenses be affirmatively pled is to give fair notice of the nature of the defense and thereby prevent a last minute surprise to the plaintiff. Norman v. City of Shreveport, 141 So.2d 903 (La.App.2d Cir. 1962).
The affirmative defense of donation raised in appellants' Second Supplemental Answer was one foreshadowed by appellees' original petition, wherein they alleged that the sale deeds were "donations in disguise." In addition to appellees' own allegation that the deeds were donations, numerous references to the alleged donations, either express or implied, can be discovered from a cursory review of the pleadings and filings contained in the record.[1]
*231 Given the copious references to the counter letters and claims and denials that the land which was transferred in the two simulated sales had been subsequently donated, we believe the amended answer which appellants filed on the day of trial was more in the nature of housekeeping than the raising an affirmative defense for the first time. Accordingly, we conclude that the district court's refusal to permit the Second Supplemental Answer to be filed was an abuse of discretion.
Because of our conclusion above that the district court abused its discretion in refusing to permit appellants to file the Second Supplemental Answer which pleaded the affirmative defense of donation, we must similarly conclude that the district court erred in refusing to consider the counter letters executed on the same day as the simulated sales. Therefore, for purposes of resolving the remaining legal issues presented in this appeal, we will consider the counter letters.

EFFECT OF THE VARIOUS DOCUMENTS
Appellants argue that, even if no money was paid for the properties, the decedents intended to donate the properties to Milton James Mize, as is evidenced by the counter letters executed contemporaneously with the simulated sale documents. Appellees argue that neither of the counter letters meet the requirements of the form of donations and, further, that the wills of the decedents evidence that they never intended to divest themselves of title to the property, only that they intended to create the appearance of having transferred the property in order to qualify for government benefits.
Our Supreme Court neatly summarized the applicable law in situations such as this in Owen v. Owen, 336 So.2d 782, 786 (La. 1976):
In our law, a simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations, and disguised transfers. In a pure simulation, sometimes called a non-transfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed, which was that no transfer had in fact taken place. In a contest between a vendor and vendee in this situation the true intent of the parties is effectuated and the courts hold that no transfer took place because the simulated sale is an absolute nullity. Successions of Webre, 247 La. 461, 172 So.2d 285 (1965); Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932); Milano v. Milano, 243 So.2d 876 (La.App. 1st Cir.1971). The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but which is intended by the parties to be a gift rather than a sale. When this sort of simulation is attacked successfully, as *232 it has been here under Article 2444, the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place, but its form is a donation rather than a sale and the Code articles on donations apply to the transfer. Stevens v. Stevens, 227 La. 761, 80 So.2d 399 (1955); Carter v. Bolden, 13 La.App. 48, 127 So. 111 (La.App. 2nd Cir. 1930); 35 La.L.Rev. 192 (1974); 25 La.L.Rev. 313 (1965).
A pure simulation may be annulled at any time by the heirs of the apparent vendor or any interested person. Relative simulations, however, produce between the parties the effects they intended if all requirements for those effects have been met. LSA-C.C. Art. 2027; Hogan v. McKeithan, 527 So.2d 982 (La.App.2d Cir. 1988).
In the instant case, as the district court noted in written reasons for judgment, the defendants have conceded that the deeds of May 6, 1977, and July 7, 1977, were simulated sales. Therefore, neither of those documents had the effect of transferring the property from the decedents to Milton James Mize in the form of a sale. However, we must now determine whether it was the intent of the decedents to donate the property to Milton James Mize and whether the formal requirements of LSA-C.C. Art. 1536 have been met. For reasons which will become more apparent below, we will consider and analyze the counter letters of May 6, 1977, and July 7, 1977, separately.
A. May 6, 1977 Counter Letter
The May 6, 1977, counter letter was executed contemporaneously with the execution of the simulated sale document before the same notary public and witnesses. The document recites that the parties had just executed a simulated sale document and acknowledges that no cash was paid for the property. It goes on to say, however, that "the consideration is actually the love and affection which donor [Mary Talbird Mize] bears for her son, the said MILTON JAMES MIZE." The document then clearly expresses that the donor "does hereby donate" the property which was the subject of the simulated sale to Milton James Mize. Finally, Milton James Mize accepted the donation in the same document.
Our review of this document indicates that it fulfills all of the formal requirements of a donation of immovable property. It clearly identifies the parties, describes the property donated, indicates that the conveyance is by way of donation, is passed before a notary public and two witnesses, and contains an acceptance by the donee. It is thus unnecessary that we consider plaintiff's attack on the sale of the 40-acre tract to an innocent third party who purchased for value and in reliance on the public records. The trial court therefore erred in annulling the transactions of May 6, 1977, and the trial court judgment will be reversed to that extent. The trial court thus further erred in rendering judgment ordering the defendants to reimburse the plaintiffs the sum received in that sale, and the amount of the money judgment will be amended to so reflect. If collation of that sum is appropriate, then the succession proceeding is the appropriate place for that issue to be considered. Owen v. Owen, supra.
B. July 7, 1977 Counter Letter
The July 7, 1977, counter letter was also executed contemporaneously with the simulated sale of the property described in both documents. The two witnesses[2] and the "notary" were the same on both documents. The counter letter is virtually identical to that of May 6, 1977, but lists donors as both decedents and the donees as both Milton James Mize and his wife, defendant Nancy Louise Mize, and reserves the usufruct for the advantage of the donors in accordance with LSA-C.C. Art. 1533.
*233 The main difference between the two counter letters, a very significant difference as it develops, is that the July 7, 1977, counter letter was "notarized" by J.E. Murphy, a justice of the peace, but not a notary public.
Mr. Murphy testified that he had been a justice of the peace for 28 years at the time of trial and had never been a notary public. He knew that he was not a notary public when he "notarized" the July 7, 1977, documents and was acting simply in his capacity as justice of the peace, although he had "notarized" documents before, including documents involving titles to automobiles.
Appellants offer generic statutory authority and argue expansive interpretations of those statutes for the proposition that the July 7, 1977, counter letter was "notarized" by Mr. Murphy. However, none of the authority offered supports their position. It still remains that the statutes upon which defendants rely require the donation inter vivos of immovable property to be passed before a notary public and two witnesses, LSA-C.C. Arts. 1536, 1833, and that the statutory authority for the powers and authority of a justice of the peace do not include the ability to notarize documents. LSA-R.S. 13:2581, et seq. In addition, we find no authority in Title 35, governing notaries public, for the proposition that a justice of the peace may function as a notary public. Although authority exists for the possibility that Mr. Murphy could have been appointed as a notary public by the governor, there was no evidence that any such appointment was ever made and, indeed, he denied ever having been a notary public.
Defendants rely on Tweedel v. Brasseaux, 433 So.2d 133 (La.1983), for the proposition that a justice of the peace can validly notarize a donation of immovable property. There, the Texas donors executed the act of donation before a Texas justice of the peace in Texas. That case does not specifically consider the powers and authority of justices of the peace in Texas, nor does the factual summary specifically state that the Texas justice was a notary public; however, it may be inferred from a careful reading of that case that the justice of the peace in Tweedel also held a notarial commission or that Texas justices of the peace are ex officio notaries public because our supreme court expressly referred to him as a notary public. Defendant's reliance on Tweedel is misplaced.
Defendants reliance on Hardin v. Williams, 478 So.2d 1214 (La.1985), for support is also misplaced. In Hardin, the supreme court held that a donation inter vivos of immovable property was null where the notary public who notarized the document was in another room of the office where the document was executed.
Defendants attempt to distinguish Hardin by arguing that all parties were present in the same room at the time the July 7, 1977, counter letter was executed. Their attempt to distinguish Hardin fails. The question of being "present in the same room" is not at issue here. Defendants overlook the fact that the counter letter was not passed before a notary public or other officer authorized to execute such functions as is strictly required by the Civil Code and Hardin. A careful reading of Hardin leads us to the conclusion that the July 7, 1977, counter letter does not constitute a valid donation of the decedents' 60 acres of community property, either standing alone or in conjunction with the simulated sale executed immediately before the counter letter. What Hardin makes clear is that the requirements of Art. 1536 must be strictly followed in order for a donation inter vivos of immovable property to be valid. Because the record in the instant matter demonstrates that strict compliance with Art. 1536 was lacking, both the simulated sale and the donation of July 7, 1977, were nullities, there was no transfer of title of the decedents' 60 acres of community property, and said property remains in the estate of the decedents rather than in that of Milton James Mize.
C. The Decedents' Wills
Appellees filed a motion to proffer the decedents' wills with this court in order that we might have additional evidence of the decedents' intentions, especially if we *234 should consider the counter letters, which were not considered by the district court. Appellees had proffered those items of evidence with the district court, but said proffer was refused because the district court sustained their objections to the admissibility of the counter letters. We previously granted appellees' motion and, in light of our decision above regarding appellants' affirmative defense and the counter letters, we will consider those wills in order to determine whether the intentions contained therein may shed any light on the issues in this case.
Appellees' proffer contains copies of four wills, two of which were executed improperly[3] on July 5, 1977, before two witnesses and the same justice of the peace whose lack of authority to notarize is the subject of our discussion, supra. The other two were signed properly by the decedents, but are not dated in accordance with LSA-R.S. 9:2442 B. What we are asked to consider, however, is not whether those wills are valid and subject to probate, but whether they disclose anything about the decedent's intentions when executing the simulated sale documents and counter letters.
All of the wills are virtually identical in nature: each revokes all prior wills and leaves all of the decedent's property to the surviving spouse or, in the event the spouse predeceases the decedent, to the decedent's children, "share and share alike."
Notwithstanding appellees' position that these testamentary documents disclose the decedents' desire that the immovable property be divided evenly among their children, we can discern no such intentions regarding the instant property from the "boilerplate" dispositions in the will. Those dispose of each decedent's "property" with no mention whatsoever of to the property which is the subject of this appeal. Accordingly, although we have reviewed those testamentary documents for whatever evidence they may contain of the decedents' intentions regarding the immovable property at issue, we find nothing to alter the results reached hereinabove.

MONEY JUDGMENT
Finally, appellants argue that the district court abused its discretion in rendering a money judgment in favor of plaintiffs/appellees in the amount of $94,046.68 for mineral lease rental payments and royalties received, all of which arose out of a mineral lease executed by Milton and Nancy Mize on the 60 acres of community property which the decedents unsuccessfully attempted to donate to them on July 7, 1977. Appellants argue that they are what we will characterize as "putative donees," for lack of a more appropriate term, using family law concepts by analogy.
Although we understand the argument set forth by appellants, we believe their position is untenable. Primarily, Hardin v. Williams, supra, does not appear to permit a good faith doctrine in construing the validity of a donation inter vivos of immovable property. Additionally, however, appellants have neither provided any authority for their proposition that those same equitable principles which permit a good faith spouse to enjoy the civil benefits of a putative marriage should apply in the context of the law of donations, nor can we find any such authority. In the absence of sound legal principles in support of appellants' position, we decline their invitation to commingle the laws concerning marriage and family with those concerning donations inter vivos and immovable property.
Appellants additionally argue that they should not be held liable for those monies received as a result of the mineral lease on decedents' community property because Milton James Mize had a power of attorney from the decedents to manage their affairs. While we are reluctant to unfairly characterize appellants' argument, it would appear that they equate being an attorney-in-fact with the right to manage the decedent's *235 affairs in the best interest of Milton James Mize rather than that of the decedents. The fact that Milton James Mize held the power of attorney does not mean that he is entitled to funds belonging to his principal. He is simply the manager of his principal's affairs to the extent of the power of attorney. LSA-C.C. Art. 3002, et seq.
Appellants next argue that, until the defects of the July 7, 1977, counter letter were brought to their attention, they were good faith possessors under LSA-C.C. Art. 487. With this we have no dispute. However, they further argue that as good faith possessors they are entitled to keep whatever income they derived from the decedents' 60 acres of community property until such time as the defects in the counter letter's form was called to their attention. With this we do not agree.
Under LSA-C.C. Art. 488, products derived from a thing as a result of diminution of its substance belong to the owner of that thing. Because of formal defects in the July 7, 1977, instruments conveying title to appellant Nancy Louise Mize and her deceased husband, the owners of the decedents' 60 acres of community property were the decedents and, after their deaths, their estates. Thus, the income from the mineral lease on that property should have gone to the decedents to do with as they pleased.
In addition, Article 488 dictates that when those products are reclaimed by the owner, as has happened here where the administratrix of the decedents' successions has made a demand for those monies, a possessor in good faith has the right to reimbursement of his expenses. Scott v. Hunt Oil Co., 152 So.2d 599 (La.App.2d Cir. 1962), on rehearing. The owner may not enjoy the profits without participating in the expenses incurred in producing those profits, since to permit him to do so would violate the moral maxim of the law that no one ought to enrich himself at the expense of another. Huckabay v. The Texas Company, 227 La. 191, 78 So.2d 829 (1955).
At trial below, appellants neither introduced nor offered any evidence of expenses incurred in relation to those profits they enjoyed as a result of the mineral lease. Their proffer of evidence, which we have reviewed in detail, contains only one item of "expense" related to the mineral production, the taxes on the property subject to the lease, which appellants have paid since 1977 for a total of $1,394.69. The remaining expenses contained in their proffer were strictly personal expenses incurred by the decedents for groceries, medical expenses, utilities, and miscellaneous expenses. These are not related to the mineral income, and may not be deducted by the appellants. However, the property taxes which Nancy Louise Mize testified she and her husband paid will be deducted from the total money judgment assessed by the district court and said judgment will be amended accordingly.

CONCLUSION
In conclusion, we have determined that the trial court erred in not considering the counter letters. We have therefore done so and have also considered the wills proffered by the plaintiffs.
We agree with the trial court that the transactions at issue are simulations. However, we conclude that the transaction of May 6, 1977, is a valid donation, and the trial court judgment annulling that conveyance should be reversed.
THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
that paragraph (1) of the trial court judgment ordering "[t]hat certain deed and/or simulated sale executed by MARY TALBIRD MIZE and JAMES ALBERT MIZE, husband and wife, in favor of MILTON JAMES MIZE dated May 6, 1977, and recorded May 10, 1977, in Conveyance Book 1101 at page 685, DR# 744163 of the records of Ouachita Parish, Louisiana, be and the same is hereby annulled" is reversed. The plaintiff's demands with respect to this transaction are rejected. We therefore also conclude that the money judgment must be reduced by the amount of the price the defendants received for this 40-acre tract, $34,000.
We have concluded that the trial court correctly determined that the transaction *236 of July 7, 1977, involving the 60-acre tract should be annulled because it is a simulation and an invalid donation. The succession of the plaintiff's decedents is therefore entitled to be reimbursed for the mineral receipts on the property. However, we have agreed with the defendants that they should be reimbursed for certain expenses in the amount of $1,394.69, which they have incurred on the property.
The trial court judgment is thus amended to reduce the sum in paragraph (3) from One Hundred Twenty-Eight Thousand Forty-Six and 68/100 Dollars ($128,046.68) to Ninety-two Thousand Six Hundred Fifty-one and 99/100 Dollars ($92,651.99).
The judgment appealed is affirmed in all other respects. All costs herein are assessed equally between the plaintiffs and defendants.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED.
NOTES
[1] We note the following in this regard:

a. In appellants' Answer to Interrogatories Propounded by Plaintiffs, filed October 14, 1987, in response to appellee's interrogatory regarding whether appellants had "pa[id] any consideration," appellants responded in the negative.
b. In appellants' Interrogatories to Plaintiffs, filed October 15, 1987, Interrogatory # 11 makes references to the transactions as "donations" and asks appellees questions regarding those donations and their implications.
c. In appellants' Request for Production of Documents to Plaintiffs, filed October 15, 1987, part 5 of request # 15 makes reference to appellees' allegations that the deeds may constitute donations and requests documents from appellees regarding this allegation.
d. In appellants' Request for Admissions of Fact to Plaintiffs, filed October 15, 1987, appellants requested that appellees admit
1. that no one objected on May 6, 1977, when the decedents donated the same property to Milton James Mize by way of counter letter which had been the subject of an alleged sale transaction only moments before,
2. that the decedents conveyed the second parcel of property to Milton James Mize on July 7, 1977, by way of a counter letter, and
3. that no one objected on July 7, 1977, when the decedents donated the same property to Milton James Mize by way of counter letter which had been the subject to an alleged sale transaction only moments before.
e. In appellees' Motion to Produce to Defendants, filed October 22, 1987, appellees sought copies of all transactions regarding the two deeds, "including any acts of purported donation [or] counter letters...."
f. In appellees' Answer to Interrogatories by Defendants, filed November 17, 1987, appellees respond ambiguously and evasively to defendants' Interrogatory # 11 (referred to in our paragraph b above), but in their response to # 13, plaintiffs specifically deny that the deeds were "donations."
g. In appellees' Answers to Defendants' Request for Admissions of Fact, filed November 17, 1987, appellees denied appellants' requests referred to in our paragraph d 1, 2, and 3 above, but admitted the existence of a purported act of donation while denying its validity.
h. Finally, in the Pre-Trial Statement, filed January 6, 1988, appellants make reference to the counter letter executed on May 6, 1977, and also that the land sold on July 7, 1977, was subsequently donated to appellants' decedent. In addition, appellants contended that no accounting was called for because "the property had been donated by subsequent transaction...."
[2] These two witnesses are the same as those who witnessed the other counter letter and the two simulated sales documents. These same individuals witnessed the decedents' wills on July 5, 1977, wills which were subsequently determined to be invalid and were allegedly revoked and replaced.
[3] The decedents signed their own wills once after the dispositive provisions and their spouse's will once after the attestation clause, rather than each of them signing his or her own will at the end of the dispositive provisions and again after the attestation clause. LSA-R.S. 9:2442 B.