770 So.2d 786 (2000)
LAMSON PETROLEUM COMPANY
v.
HALLWOOD PETROLEUM, INC., et al.
No. 99-1444.
Court of Appeal of Louisiana, Third Circuit.
May 24, 2000.
Rehearing Denied August 2, 2000.
Writ Denied November 27, 2000.
*787 Mark H. Tompkins, Lafayette, LA, Ewell E. Eagan, New Orleans, LA, Counsel For Appellants Union Oil Company of California, Petrocorp, Inc., and Triton Oil and Gas Corp. and Triton Oil and Gas Corp.
Robin D. McGuire and Arthur D. Mouton, Lafayette, LA, Carl D. Rosenblum, Covert J. Geary, New Orleans, LA, Counsel For Appellee Lamson Petroleum Corp.
(Court composed of NED E. DOUCET, Jr., Chief Judge, SYLVIA R. COOKS, and OSWALD A. DECUIR, Judges).
DOUCET, Chief Judge.
This case concerns ownership of a 2.165 acre strip of roadbed located in the Scott Field area of Lafayette Parish, Louisiana. The Plaintiff, Lamson Petroleum Corporation (Lamson) sued Hallwood Petroleum, Inc. and others who claim ownership of the property or underlying minerals as landowners, mineral lessees, royalty owners or overriding royalty owners, seeking recognition of its oil, gas and mineral leases on the .59 acre tract, recovery of 100% of the production attributable to that property and a report of all sums due to it from the sale of production attributable to the property.
In 1989, Hallwood completed the A.L. Boudreaux No. 1 Well in the Scott Field. The property at issue in this suit is located in the production unit and both Hallwood and Lamson Petroleum Corporation purport to hold mineral leases on the property. The Defendants leased from the successors in title to the tracts divided in the succession of Severin Duhon. Lamson leased from the successors in title to a portion of the property which was allegedly left undivided. The trial judge, in his written reasons for judgment, correctly outlined the chain of title and the essential issues of this case as follows:
The 2.165 acre tract in controversy (Lamson's primary claim) is a strip out of and along the Eastern extremity of Section 6, T 10 S, R 4 E and is a part of the roadbed of the present Louisiana Highway 93, also known as Rue De Belier. The title history as it relates to the primary issue in this case is as follows:
(1) Prior to July 28, 1908, Severin Duhon was the owner of a tract of land described as containing 300 arpents, more or less, in Section 6, the Eastern boundary being the section line separating Sections 6 and 5, T 10 S, R 4 E. That tract included the property at issue in this case.[1]

*788 (2) By act dated July 28, 1908, Severin Duhon "donated and dedicates to the Parish of Lafayette for public use as a Public Road" a strip of land forty feet wide "on the Eastern line of his land along its full length."[2] The 2.165 acre strip at issue in this case is a part of the forty foot right of way.
(3) On February 4, 1918, Severin Duhon executed a noncupative will by public act in which the tract noted above, thought to contain 300 arpents, more or less, was divided into six lots, with the East and West halves of the tract each divided into three lots and each lot described as containing 50 arpents, more or less. Specific lots were devised to each heir. The lots at issue in this case are the three lots comprising the East half which were devised to Clara Duhon Boudreaux, Rose Duhon Hebert and Frank Duhon. For convenience, those heirs will be referred to simply as "Clara," "Rose" and "Frank."
(4) Severin Duhon died on March 11, 1921. His succession proceedings[3] contain two judgments. The first judgment, dated March 22, 1921, placed his heirs is possession of all of the property belonging to the succession, including specifically the 300 arpent tract, in undivided proportions and does not mention the will. The second judgment, dated March 23, 1921, ordered that the last will and testament be registered and executed.[4]
(5) On February 10, 1922, the heirs of Severin Duhon executed an untitled instrument which recites, inter alia:

"they each acquired from their ancestor, Severin Duhon, land situated in the Parish of Lafayette, La., said to contain fifty arpents, more or less."
* * * * * * * *
"they have been sent into possession * * * of the property belonging to the succession * * * the tract of land hereinbefore described being therein included."
* * * * * * * * * * *

"the said tract of land was equally divided into six parts and was transferred to them respectively by the said Severin Duhon as fully shown in said act, and they hereby ratify and confirm the partition and transfer to each of them of the said property made in said act and for the purpose of more definitely carrying the said partition they have caused a survey to be made of said tract of land and a division of same and plat thereof made by V.E. Smith, Civil Engineer, which is hereto attached and paraphed by me, officer, for identification herewith."[5]
The said untitled instrument of February 22, 1922 is referred to hereinafter as "the ratification instrument."
The trial court, after a trial on the merits, handed down judgment in favor of Lamson. Remaining as defendants at the time of trial were: Union Oil Company of California, PetroCorp Incorporated, Triton *789 Oil & Gas Corp., Integrated Drilling & Exploration, Inc., Quarles Drilling Corporation, T.M. Quigley, Graves Trust, Kenneth R. Landsdowne, Elaine Lyons, Joseph J. Passarello, Dick Polder, James T. Tavemakis, McCullough Energy Guaranty Distribution Program, 1992, L.P, Jules Menou Arceneaux, Paul H. Begnaud, John Roy Boudreaux, Ophie Boudreaux, Chase R. Champagne, Jonathan J. Champagne, Rachel Boudreaux Champagne, Chase R. Champagne 1990 Trust, Jonathan J. Champagne 1990 Trust, Rachael Boudreaux Champagne 1990 Trust, J.P. Drummond, Billie Jean Drummond, Gentry Oil & Gas, Inc., Pipe Oil & Gas Corp., Byron Charles Richard, Camille Ruth Richard, Donald Elphie Richard, Elizabeth Anne Richard, Helen Marie Richard, John Martin Richard, Ruth Begnaud Richard, Thomas Leonce Richard, Carol Ann Rivers, Elizabeth Alverson, Ronald J. Guidry, Ernest Clingman, Paul C. Perret, June Perret, Leon E. Perret, Joyce S. Perret, Gayle Rizzo, Peter C. Rizzo, Robert D. Booher, Four T's Ventures, Inc., Future Realty, Inc., James C. Gresham, Jr., Mineral Investment Corporation, Palm Production Company, Ben Woodson, Jr., Lila M. Towle Rubsamen, Roger D. Steward, Christian Kottemann, Jr., Helen Kottemann, Sharon Cheaney, Clarence D. Freberg, 11, Seven-F Production Company, James Robert Bostwick, Lisa F. Jamiolkowski, Katherine K. Freberg, William M. Freberg, James T. Davis, Diane Davis, Benjamin Saunders, Patricia Saunders, Estate of Theresa Cecil Dumaresq, Martin 0. Miller, Diane Miller, Adasair Copland, Lawrence Eustis, Tatjana Eustis, Estate of Fred Goodwin, Jr., Harold Mathy, Janelle Mathy, Karen A. Miller, Savage Exploration, Inc., Joy Scott, Morin Scott, Ellen Supple, Timothy Supple, Clifford John Terro, Warexeco, Inc., Mar, Inc. Bebe Lou Baynham, Michael Mathy, Warren R. St. Pierre, Bright Condos, James H. Dunbar, Jr., EMCO, Inc., Standard Mortgage Corporation, Petroex, Inc., L. Joe Sockwell Estate, Chester L. Boudreaux Estate, J.H. Echezabel, Inc., James H. Echezabel, John Warren Duhon, Geneva Duhon Smith, Gregory John Smith, Wade Smith, Jr., Terrance Chandler and Linda Chandler. Judgment was rendered against all these. Default judgments were rendered against: Adasair Copland, Lawrence Eustis, Tatjana Eustis, Estate of Fred Goodwin, Jr., Harold Mathy, Janelle Mathy, Karen A. Miller, Savage Exploration, Inc., Joy Scott, Morin Scott, Ellen Supple, Timothy Supple, Clifford John Terro, Warexeco, Inc., Mar, Inc., Bebe Lou Baynham, Michael Mathy, Warren R. St. Pierre, John Warren Duhon, Geneva Duhon Smith, Gregory John Smith, Wade Smith, Jr., Terrance Chandler, Linda Chandler, Ronald J. Guidry and James T. Tavemakis.
The judgment recognized the Lamson leases covering the 2.165 acres, ordered that effective January 1, 1990, 100% of the oil, gas and other mineral production attributable to the interest of Lamson and its lessors is due and payable to them, that the Defendants render an accounting of that production and that the Defendants pay legal interest on all amounts due Lamson for past production accruing from the time each amount was received by Lamson, except in so far as the amounts were deposited into an escrow account established by the parties. Suspensive appeals were filed by: Union Oil Company of California, PetroCorp Inc. and Triton Oil & Gas Corp., who will be referred to as the Appellants.
We first note that the Appellant's brief makes no reference to the record herein. Rule 2-12.4 or the Uniform Rules-Courts of Appeal states that:
The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.
Appellant's brief refers only to documents in its own Appendix. This is not *790 suitable reference to the record. However, we will consider the Appellant's arguments in spite of this deficit. However, we must first consider Lamson's motion to dismiss the appeal.

MOTION TO DISMISS
Lamson argues that, because the Appellants rights rise out of mineral leases from non-appealing Defendants, the judgment against the Appellants is final and cannot be appealed. We find no merit in this argument. La.Code Civ.P. art. 3664 provides that: "The owner of a mineral right may assert, protect, and defend his right in the same manner as the ownership or possession of other immovable property, and without the concurrence, joinder, or consent of the owner of the land or mineral rights." Therefore, we find that the Appellants have not lost their right of appeal as a result of the failure of the lessor/owners to appeal.

INTERPRETATION OF THE SUCCESSION DOCUMENTS
The Appellants assert four assignments of error questioning the trial court's interpretation of the succession documents:
1. Do the rules regarding the interpretation of deeds apply to testamentary dispositions?
2. Does a reference in an instrument to "bounded by public road" exclude the road unless a clear and precise intention to convey same is contained in such instrument?
3. Should a survey plat attached to an instrument ratifying a will control the interpretation of the limits of the property devised?
4. When does a survey plat control over the clearly expressed intent of the parties to an instrument?
After reviewing the record and the applicable law, we find that the trial court's reasons for judgment thoroughly and correctly answer these questions. Therefore we adopt them as our own, as follows:
The Inconsistency Of The Two Succession Judgments:
The inconsistency between the judgment of possession and the judgment ordering the will executed should be addressed. As indicated earlier, apart from the will, a judgment of possession was necessary to place the heirs in possession of the property not devised in the will.[6] It was perhaps by oversight that the judgment purported to place the heirs in possession, in indivision, of all of the succession property including specifically the 300 arpent tract without mention of the will. Civil Code Article 1302 captioned "Testamentary Partition" provides that "There is no occasion for partition, if the deceased has regulated it between the lawful heirs or strangers * * * and in such case the judge must follow the will of the testator * * *" If the judgment of March 22, 1921 placing the heirs in possession of the 300 arpent tract in indivision were to be considered contrary to Article 1302, such error would not affect the remaining succession property. If the judgment was in error as to the 300 arpent tract, it is the opinion of the court that the judgment rendered the following day, March 23, 1921, which ordered the will executed, constituted a correction of the judgment of possession rendered the previous day. Perhaps the better procedure would have been for the judgment of possession to recognize the will; order it executed; place the heirs, as legatees, in possession of the lots described in the will according to the terms of the will; and place the heirs, as intestate heirs, in possession of the remaining succession property in indivision.
Since, under the provisions of Article 1302, there was "no occasion for partition" because of the prior testamentary *791 partition, the untitled February 22, 1922 instrument was not a partition but rather a ratification of what had already been done by will. In addition to being a ratification, however, it was also an agreement by the legatees as to the location of the boundaries as shown on the attached Smith survey.
WHAT WERE THE EAST BOUNDARIES OF THE LOTS ACQUIRED BY CLARA, ROSE AND FRANK?
The threshold question in this case is whether the will and/or the ratification instrument conveyed the entire 300 arpent tract to the heirs or did any portion remain undivided? More specifically, the question is: Did the lots devised to Clara, Rose and Frank extend to the Eastern extremity of the tract, i.e., the section line? If they did, Lamson's lessors were not the owners of the property at issue and this action for recognition of its leases fails. If the property at issue was not included in the three lots and remained undivided, Lamson's leases, which were obtained on that basis, are entitled to recognition.
The Descriptions:
The Judgment of Possession: The East boundary in the description of the 300 arpent tract in the judgment of possession is "on the East by Armand Richard." It is undisputed that the tract extended East to the section line and included the 2.165 acres at issue in this case. Armand Richard owned the property East of the section line.
The Will: The descriptions of the lots bequeathed to Clara, Rose and Frank in Severin Duhon's last will and testament recite the East boundary of each of those lots as "public road."

The Text of the Ratification Instrument: In the February 22, 1922 instrument discussed earlier, the lots of Clara, Rose and Frank are described as bounded on the East "by lands of Armand Richard."

The Plat of Survey in the Ratification Instrument: The plat of survey of V.E. Smith dated December 26, 1921 which is a part of and paraphed for identification with the ratification instrument depicts the lots acquired by Clara, Rose and Frank as bounded on the East by "Public Road" but not including the road.

The Meaning of "Bounded by the Road"
It is obvious from the above that with reference to the East boundaries of the lots, the survey follows the worded descriptions in the will. However, both the will and the survey conflict with the worded descriptions in the ratification instrument. The issues to be determined, therefore, are (1) whether, in 1922, any part of the public road was West of the section line and if so, (2) whether the lots devised to Clara, Rose and Frank extended as far East as the section line or whether they stopped at the West right of way line of the public road as depicted on the survey.
With reference to whether any part of the road was West of the section line in 1922, the exact location of the section line is crucial because as stated earlier, the forty foot right of way grant was on the Eastern extremity of the Severin Duhon tract and the section line was the East boundary of that tract. The location of that section line was seriously disputed in Docket 96-2277 and the evidence on that issue was made a part of the record in Dockets 93-2341 and 93-2340. In those three cases, this court accepted the opinion of Michael Mayeux, the surveyor who testified on behalf of Lamson, as to the location of the section line. In the present case, there was additional testimony by Mayeux on that issue.[7] Charles Camp, the surveyor whose opinion differed from Mayeux as to the location of the section line and *792 who testified on behalf of the defendants in earlier cases, did not testify in the present case. However, his testimony in the earlier cases was made a part of the record in this case along with all of the other testimony in those cases. Based upon the evidence in the record and for the reasons stated in the earlier cases in this series, the court finds the location of the section line and of the forty foot right of way to be as shown on the surveys offered in evidence by Lamson.
The more difficult issue is whether the lots devised to Clara, Rose and Frank extended Easterly to the Eastern extremity of the Severin Duhon property or whether they stopped at the public road. Each of the earlier cases in this series contained worded descriptions which stated that the boundary at issue was the public road but each case was different in certain particulars. The difference between this case and the other cases is that in this case the will and the survey do not include the road in the three lots at issue but the ratification instrument, of which the survey is a part, does include it.
A boundary call of "public road" does not mean that the tract being described stops at the road right of way in every situation. In Dockets 96-2277 and 93-2340 this court held that the lots described in acts of partition as bounded by the public road meant that the property being described stopped at the road right of way and did not include any part of the road. In Docket 93-2341 this court held that the lots described as bounded by public road did not stop at the road but instead included all or part of the public roads recited to be the boundaries. Obviously, there were factors considered other than the boundary recitations in the written descriptions. The reasons for judgment in each of those cases contain discussions of the basic rules relating to the interpretation of property descriptions under Louisiana law. Much of the following is extracted from those reasons for judgment as well as from the reasons for judgment in Docket 93-2338.
Many factors enter into a discussion of a public road recited to be a boundary in a worded description. It is appropriate to begin by noting the criteria to be considered in a judicial determination of boundary locations. Although the principles set forth in the following language may have had earlier origins, the 1920 Louisiana Supreme Court case of Meyer v. Comegys, is probably the most-often cited: "* * * the legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the party or parties.[8]
Citing the many cases which have relied upon the above language is not necessary. Suffice it to say that language has not been overruled and to this day stands and is often cited by courts and surveyors as evidenced by the testimony in this series of cases. That a road is an artificial monument is not disputed and was specifically recognized in Meyer. It follows then that the recited East boundary of Clara's, Rose's, and Frank's lots in the Severin Duhon will was an artificial monument, i.e., a "public road."
If a tract of land is described as bounded on the East by "public road," does that mean that the boundary is the West right of way line of the road? With nothing else in the description or in the instrument indicating otherwise, the common sense interpretation of that language is, in this court's opinion, that the property stops at the road and does not include the road or any part of it. Such an interpretation has been recognized as the general rule in Louisiana. Interestingly, this rule was perhaps *793 most clearly and forcefully stated in a case in which the court was called upon to interpret a statute which modified that very rule. The statute is R.S. 9:2971 (Act 555 of 1956), and the case is State v. Tucker, [247 La. 188,] 170 So.2d 371 (La.1964). The statute provides in part as follows:
It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; * * *
In addressing the constitutionality of another part of the act which gave it retroactive application in some situations, the court in Tucker set forth the law which applies to transactions prior to the effective date of the statute:
Important here, we think, is the circumstance that each of the deeds described the land conveyed by specific boundaries, one of which was the rail-road right of way. In Louisiana a sale of land by fixed boundaries is known as a sale Per aversionem. Deeply imbedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries. Prior to Act 555 of 1956, this ancient principle applied with equal force when the sale designated a railroad right of way as a boundary. Such a sale included no property underlying the right of way. The rule had a sound basis: It effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract. (Footnotes omitted, italics added)
The Tucker case held that the statute could have no application to conveyances prior to its effective date, August 1, 1956. Since the present case involves the descriptions in a 1918 will and a 1922 instrument of ratification, R.S. 9:2971 does not apply and the language from Tucker does apply. In addition to the cases cited in Tucker, many others have held that a description designating a road, canal, railroad, or other right of way as a boundary means that the described parcel stops at the right of way and does not include property underlying the right of way.[9]
That intention of the parties governs the interpretation of all contracts is a basic premise of contract law. Article 2045 of the Civil Code, captioned Determination of the intent of the parties sets forth the rule by defining interpretation of a contract. That article provides: "Interpretation of a contract is the determination of the common intent of the parties." Article 2046 provides that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[10]

*794 ... [I]n the present case defendants argue that in his will, Severin Duhon intended to partition the entire 300 arpent tract. They argue that the six lots which are described in the will total exactly 300 arpents and there would have been no reason to leave a small strip undivided. In the earlier cases in this series, while accepting the argument that the parties very probably did not intend to leave an undivided strip, it was the court's further opinion, however, that the parties very probably did not know that they owned any part of the road. This court held that the boundary description would not be changed by the court in order to reflect what the description might have been had the parties known that they owned part of the road. A similar situation exists in this case. The court agrees that the language of the will does not indicate that Severin Duhon wishes to leave a strip undivided along the East edge of his property. However, whether or not he knew that he owned part of the public road, he did not include it in the bequests to Clara, Rose and Frank and the court will not change the lot descriptions in his will to include property he would perhaps have included had he known that he owned it.
Defendants attempt to distinguish this case from cases in which there were sales per aversionem, arguing that here the court must determine the intention of a testator in a will as distinguished from the intention of the parties to a sale. In other words, argue the defendants, the numerous authorities relating to the interpretation of descriptions in a sale per aversionem have no application to descriptions in a will. They assert that Articles 1712 and 1713 of the Civil Code govern the determination of the intention of the parties in wills and that is different from interpretation of the intention of the parties in sales. While admitting that most of the jurisprudence cited in the interpretation of property descriptions involves sales, the court has found no authorities which suggest that words describing a parcel of land in a will should be interpreted differently from the same words in a sale.
The defendants cite language from Succession of Fertel, [208 La. 614,] 23 So.2d 234 (La.1945) that "When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate" presumably to support the argument that Duhon intended to devise the entire 300 arpent tract. While conceding a valid argument that Severin Duhon had no intention to leave an undivided strip East of the tract, the Fertel case does not support that argument. The Duhon will did not even pretend to dispose of all of his estate whereas in Fertel the will clearly disposed of the entire estate. If the presumption suggested by the defendants were applied, what would be the disposition of Duhon's property which is not mentioned in the will? As noted earlier, Civil Code Article 1709 specifically provides that if a will does not dispose of all of the property of the estate, the property "remaining undisposed of" devolves upon the legal heirs. Common sense dictates this even if the Civil Code did not.
To recapitulate: From Tucker comes recognition of the rule that a description with a road as a boundary indicates an intention of the parties that the described property stops at the road. It follows logically from that, however, that if the instrument reciting the road as a boundary contains words evidencing a stronger intention to include all or part of the road in the description, the stronger intention prevails. The problem arises when there are contradictory indications of intention of the parties as in the present case. In those circumstances, the court must determine which factors prevail.
.... In the present case, ..., the survey shows a public road which is clearly not a part of the lots at issue.

*795 Worded Description Versus Survey

There is extensive discussion In the case law of the long-established rule that in the event of a conflict between a worded description and a survey, the survey prevails. The survey in the ratification agreement, as recited earlier, was attached to and paraphed for identification with the instrument. The survey was a part of the act which was signed by the parties.
On the issue of a conflict between a worded description and a survey, the following language of the Supreme Court from Casso v. Ascension Realty Co., 196 So2d[So.] 1 (La.1940) is perhaps the most-cited language on the issue:
That the diagram or map attached to a deed controls the description has been so repeatedly held by this court that this rule has become a law of property in this state, and cannot be lightly disregarded in this case or any other case. The map controls the worded description * * * [T]he worded description may be detailed and accurate but, if there is a direct conflict with the worded description and the map, the map controls the worded description. 196 So2d[So.] 1, 5.
The court in Casso cited cases dating back to 1834 supporting the priority of surveys over worded descriptions.
A review of the jurisprudence indicates that there are two rules relating to surveys attached to deeds, and they are sometimes confused. The first rule is that an attached plat becomes a part of the deed; the second rule is that in the event of a conflict, the survey is over the wording in a description. Eves vs.[v.] Morgan City Fund, 252 So[.]2d 77[770] (La.App. 1st Cir.1971), recognized the separate rules:
Where an ambiguity or error exists with regard to the description in a deed, an attached map or survey relating to the ambiguity or error will control. Casso vs.[v.] Ascension Realty Co., 195 La. 1, 196 So. 1.
Where a map is annexed to a deed and reference made thereto in the description contained in the deed, the map is part of the deed the same as if copied therein. Werk vs.[v.] Leland University, 155 La. 971, 99 So. 716[ (La.1924)].
If an inconsistency exists between the description in a deed and an attached map or plat, the description in the map or plat prevails. Missouri Pacific Railroad Co. vs.[v.] Littleton, [(]La. App.[ 2 Cir.1960)], 125 So.2d 37.
A comprehensive discussion of the jurisprudence relating to those issues is not necessary. Suffice it to say that unless it is very obvious that a survey is wrong,[11] the survey prevails over the wording of the description if there is a conflict.
For the purpose of relating the jurisprudence involving surveys to the present case, it is appropriate to revisit the "legal guides for determining a question of boundary or the location of a land line" from Meyer vs[v.] Comegys, supra, discussed earlier. In their order of importance they are natural monuments, artificial monuments, distances, courses, and quantity, but the controlling consideration is the intention of the parties. How does that rule fit with the rules relating to surveys attached to deeds? Surveys are not specifically listed or ranked by importance in the "legal guides." Apparently they are a part of the catchall "controlling consideration is the intention of the party or parties."
Defendants assert that the surveyor, V.E. Smith, should have used the East boundary call of "lands of Armand Richard" which was in the worded description in the ratification instrument *796 rather than the "public road" call in the will. They argue that the plat which is attached to the ratification instrument is "an erroneous survey plat." In view of the "lands of Armand Richard" call in the worded description and the lack of any apparent reason for retaining a small strip in indivision, that argument is not unreasonable. That argument gives rise to two questions: (1) Did the heirs know they owned the property underlying the road? (2) Did the surveyor know that the heirs owned the property underlying the road? The evidence strongly suggests a negative answer to both questions.
Although perhaps not critical to this court's decision, it is interesting to note the language in the upper right corner of the plat of survey: "Note: the boundaries of this tract of land were pointed out to the surveyor by the parties interested in the partition." Admitting for the purpose of argument that in the ratification instrument, the heirs intended to partition the entire tract, what is the significance of the above language? Examining the events in sequence, the heirs pointed out four corners and instructed the surveyor to divide the tracts into six lots of equal size. However, the tract pointed out did not include all the property they owned because the Northeast and Southeast corners did not reach the East boundary of all of the property they owned. Next, the surveyor followed their instructions and divided the tract which was pointed out to him into six lots of equal size. Assuming the heirs mistakenly believed their ownership ended at the road and assuming it was a mistake for the surveyor to fail to make an independent determination of the true East boundary, what then should the court do about these mistakes?
The defendants contend that the strip which was not included in the survey should be added to the three Eastern lots allotted to Clara, Rose and Frank giving those heirs ownership beyond the lots shown in the survey and beyond the boundaries recited in the will. The only other solution is to decree that the strip of land on the East was not partitioned and that all of the heirs remained owners of the strip in indivision. Did the heirs intend the lots of Clara, Rose and Frank to extend beyond the lots allotted to them in the survey in order to reach the "lands of Armand Richard" even if it would mean that those three heirs would acquire more land than the other heirs? Because it is impossible to determine with any reasonable certainty what the heirs intended or whether they even knew they owned the land under the road, the manner in which the appellate courts have resolved this issue in similar cases becomes increasingly important, particularly the cases which treat the issue of worded descriptions versus survey. The fact that both the will and the survey designate the road as the boundary as against only the worded description in the ratification instrument certainly favors the road as the boundary.
Further Analysis of the Ratification Instrument
Did the ratification instrument do more than ratify the testamentary partition? The answer to that question must be affirmative because by incorporating the Smith survey, the ratification instrument established the precise boundaries of each of the six lots and additionally, it established a twenty foot right of way "as a reserved road for the benefit of each tract* * *" The more pertinent question is: Did the ratification instrument partition more land than Severin Duhon partitioned in his will? While there is unquestionably an inconsistency in the ratification instrument between the worded descriptions of the three lots and the attached survey, there is no inconsistency in the will. There is no language in the will which contradicts the East boundary of the three lots as "Public Road." Severin Duhon certainly had the right to designate the road as *797 the East boundaries of those lots irrespective of the location of the East boundary of the larger tract. However, on February 11, 1922, since the heirs were the owners in indivision of all property not specifically devised in their father's will, they certainly were legally capable of partitioning property which was not partitioned in the will. Ergo, the question becomes whether the parties wished to partition property not partitioned in the will. The following language from the ratification instrument is critical: "Appearers further declared that by said act Number 52506, the said tract of land was equally divided into six parts and was transferred to them respectively by the said Severin Duhon as fully shown in said act, and they hereby ratify and confirm the partition and transfer to each of them of the said property made in said act* *"
That language indicates an intention to ratify the partition and transfer of the identical property devised in the will ___ not to partition additional land.
Ruling As To East Boundaries Of The Lots Devised To Clara, Rose, & Frank
For the reasons discussed above, it is the ruling of the court that the public road as shown on the Smith survey was the East boundary of the lots devised to Clara, Rose and Frank and that Severin Duhon failed to devise the strip of land between those lots and the section line as a result of which the strip succeeded to his heirs intestate and undivided.
LOCATION OF THE EASTERN BOUNDARY
The Appellants assert two assignments of error alleging error on the part of the trial court concerning the method used to locate the eastern boundary line and/or the road described as the boundary in the will and on the plat. The Appellants argue that the testimony of the Plaintiff's expert was flawed and should not have been accepted by the trial court.
The trial court's determination of the location of a boundary is factual and should not be reversed in the absence of manifest error. Barker v. Quality Builders, Inc., 503 So.2d 1170 (La.App. 3 Cir. 1987); Broussard v. Coleman, 479 So.2d 1016 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1354 (La.1986).
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences should not be disturbed on review. Where the trial court's findings are based upon determinations of the credibility of witnesses, the manifest error rule requires that the trial court be afforded great discretion. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After reviewing the evidence adduced at trial, we find no error in the trial court's findings or in the reasoning behind those findings as stated in its reasons for judgment. While the Appellant's expert felt that the eastern boundary was in a different location, the trial court's determination is supported by the record. Further, we find no manifest error in this determination. Accordingly, we may not overturn it on appeal.

RETROACTIVE LEASE DATE
The Appellants next contend that the trial judge erred in awarding Lamson the proceeds of production which occurred prior to the date of the recordation of its leases. The appellants argue that the public records doctrine entitles them to rely on the absence of recorded leases, and prevents Lamson from recovering from third parties before the leases were recorded. Lamson responds to this argument by pointing out that, as is reflected by the record, it has been appointed agent for its lessors to pursue this litigation on its behalf and is therefore entitled to recover under the provisions of La.Civ.Code art. 488 which provides that:
Products derived from a thing as a result of diminution of its substance belong *798 to the owner of that thing. When they are reclaimed by the owner, a possessor in good faith has the right to reimbursement of his expenses. A possessor in bad faith does not have this right.
The Appellants counter by arguing that insofar as Lamson has acquired the rights of the unleased owners to production prior to the date of recordation of its leases, its claims are limited by La.R.S. 30:10(A)(3) to a claim against the operator of the well. La.R.S. 30:10(A)(3) provides that:
If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
While La.R.S. 30:10 does provide a remedy for unleased property owners to recover their share of the proceeds of a well from the operator of that well, we find no authority for the proposition that it provides the exclusive remedy for unleased land owners. In Bonnett v. Mize, 556 So.2d 228 (La.App. 2 Cir.1990), writ denied, 559 So.2d 1360 (La.1990), the court considered a case where a good faith possessor of immovable property received money from a mineral lease of that property. The court found that because the conveyance of the property to the good faith possessors was invalid, the owner was entitled to a money judgment against the good faith possessor for mineral lease rental payments and royalties received. While we agree that the Appellants have not been alleged to be the operator of the well, we find no error in the trial judge's decision to grant judgment against the Appellants as good faith possessors of the property at issue and in favor of Lamson, standing in the shoes of the owners.
CONCLUSION
For these reasons, the judgment of the trial court is affirmed. The Appellants are taxed with the cost of this appeal.
AFFIRMED.
NOTES
[1] It is undisputed that Severin Duhon is the common author in title of the lessors of Lamson and of the defendants within the provisions of C.C.P. art. 3643.
[2] Exhibit D-13. The printed form for the act is a form intended for use in a jury of freeholders grant. However, the required recitations for such a grant were intentionally deleted and the requirements of R.S. 48:492-494 (Revised Statutes 3369 and 3370 at that time) were not complied with. This gives rise to the issue of whether the parish acquired title to the strip or a servitude only. That issue is discussed later herein.
[3] Lamson Ex.-711
[4] A first impression might be that the judgment of possession was rendered prior to the discovery of the will. That is not the case, however, because the original petition for possession alleges that the decedent left a last will and testament and describes it. Since the will devised only the 300 arpent tract, perhaps this procedure was considered necessary to place the heirs in possession of the property not devised in the will. That matter is discussed further hereinafter.
[5] Joint Ex.-7
[6] C.C. art. 1709.
[7] Tr. pages 93-118.
[8] Meyer v. Comegys, 147 La. 851, 86 So. 307, 309 (1920).
[9] Where a description or plat indicates that the road abuts or adjoins the road, it means abutting the entire width of the right of way, not just the pavement or traveled surface. City of Alexandria v. Chicago, Rock Island & Pac. Railroad Co., 240 La. 1025, 126 So.2d 351, 352-53 (1961) (defining "abutting a street" to mean abutting the right of way and not the actual pavement); City of Shreveport v. Selber, 21 So.2d 738, 742 (La.App. 2d Cir. 1945).
[10] Articles 2045 and 2046 are a part of Title IV of the Civil Code captioned "Conventional Obligations or Contracts". They apply to sales contracts under terms of Article 2438 which is the first article of Title VII captioned "Sale". That article provides that "In all matters for which no special provision is made in this title, the contract of sale is governed by the rules of the titles on Obligations in General and Conventional Obligations or Contracts.
[11] Such as in Burt v. Carrier, 92 So.2d 86 (La.App. 1st Cir.1957); and James v. Buchert, 144 So.2d 435 (La.App. 4th Cir.1962).