778 So.2d 1199 (2001)
Wayne Hickmon BROUSSARD
v.
UNION PACIFIC RESOURCES COMPANY, et al.
No. 00 01079-CA.
Court of Appeal of Louisiana, Third Circuit.
January 31, 2001.
*1200 Henry A. King, King, Leblanc, & Bland, New Orleans, LA, Counsel for Union Pacific Resources Co., Oxy, USA, Inc.
Gus Aloysius Voltz III, Voltz and Ware, Alexandria, LA, Counsel for Wayne Hickmon Broussard.
Michael L. Vincenzo, Nesser King & Leblanc, New Orleans, LA, Counsel for Union Pacific Resources Co., Oxy, USA, Inc.
Court composed of YELVERTON, DECUIR, and AMY, Judges.
*1201 YELVERTON, J.
Wayne Broussard filed this suit as the lessor of mineral interests in favor of Oxy USA, Inc., who later assigned the lease to Union Pacific Resources Company. Broussard claimed that these two oil companies improperly and unreasonably calculated his royalty payments and that he was entitled to damages, interest, and attorney's fees pursuant to Louisiana Revised Statute 31:140. The trial court agreed, and the oil companies appealed. Broussard answered the appeal seeking additional attorney's fees as damages for a frivolous appeal.

FACTS
Broussard owns a tract of land in Rapides Parish by donation from his mother. His mother had leased it to Oxy. The mineral lease, dated March 30, 1994, correctly and clearly described the property. A well was drilled in 1997, and went into production on May 29, 1998. At that time John Fenstermaker was hired by the oil companies to conduct survey work for the unitization of the Broussard II, # 1 well to determine the royalty interests of the 60 landowners in the unit. Broussard and his neighbors to the east, Brenda and Quinton Ramsey, were two of these owners.
Fenstermaker's survey indicated that Broussard owned 8.473 acres. Curiously, his survey of the Broussard/Ramsey boundary was based entirely on the property description of the tract belonging to Broussard's neighbors, the Ramseys. Broussard refused to sign the division order because the survey shorted him 1.137 acres. (It gave the Ramseys 1.137 acres more than they owned.) The division order survey mislocated Ramsey's northwest corner (and, consequently, Broussard's northeast corner) by 99.85 feet. This accounted for the shortage. When Broussard tried to work out the issue amicably, he was told by the oil companies' representatives that if he did not agree with their survey, he could get his own survey.
Broussard hired Willis Engineering who performed a survey and found that Broussard's tract of land contained 9.610 acres. The Willis survey was based on the property description of Broussard's land in the mineral lease. It showed the correct acreage. Broussard then made written demand dated October 23, 1998, attaching the Willis survey. The oil companies did not respond in writing. They refused to change the amount of acreage in the division order. Broussard was told verbally that the change could not be effectuated because of an "ambiguity" in the Ramsey description. Broussard testified that he was told to get a boundary agreement with Ramsey.
Broussard's attorney prepared a boundary agreement. Broussard and the Ramseys signed it. It described the boundary between the two properties as recognized by these neighbors all along, and as shown on the Willis survey. The boundary agreement referred to the incorrect payment of royalties by the oil companies. This boundary agreement was presented in another written notice to the oil companies dated June 8, 1999. Receiving no response from that notice either, Broussard, on August 9, 1999, filed this suit.
In September 1999, the oil companies brought royalty payments up-to-date based on 9.610 acres, but retroactive only to May 1999, when the boundary agreement was recorded. They refused to pay Broussard royalties based on his correct acreage from the time of first production in May 1998.
The case was tried. One of the defenses at the trial was the public records doctrine. The Defendants contended that until May 1999, when the boundary agreement was recorded, they were not on notice of where the boundary was. The other defense was that even if they had made a surveying error, they had followed the "hierarchy of surveying protocol" and their error was not unreasonable. The trial court rejected both defenses and awarded Broussard $1,955.70 representing double the amount *1202 of the shortage in royalty payments of $916.78 from the date of first production on July 24, 1998 until September 30, 1999, with interest. Broussard was also awarded attorney's fees in the amount of $2,390. Broussard's claim for reimbursement of the cost of the Willis survey was denied.

LAW
The Mineral Code provides the procedure to be utilized for nonpayment of royalties. La.R.S. 31:137-143. Pursuant to Louisiana Revised Statute 31:137, the mineral lessor must give the lessee a 30 day written notice of the lessee's failure to make timely or proper payment of royalties. Then, under Louisiana Revised Statute 31:138, the lessee must pay the royalties due within 30 days or he must respond in writing stating a reasonable cause for nonpayment.[1] If the lessee makes payment within 30 days, the court is given the discretion of awarding damages, interest, and attorney's fees where it is proven that the lessee was fraudulent, unreasonable, or was guilty of withholding royalty payments. La.R.S. 31:139. If the nonpayment of royalties is found to be reasonable, the lessee can be subjected only to the payment of interest from the due date of the royalties. Id.

ASSIGNMENTS OF ERROR
The oil companies assign the following two errors:
1. The trial court erred as a matter of law in determining that they were legally obligated to go beyond what was recorded in the public registry in determining the boundary between the Broussard tract and the Ramsey tract.
2. The trial court erred as a matter of fact in determining that they acted unreasonably in relying on the plat developed by Fenstermaker in accordance with the hierarchy of surveying protocol for resolving conflicts in boundary descriptions.

OPINION
We will discuss assignment of error no. 2, dealing with the facts, first. Our review of factual findings is by the standard of manifest error. Hilliard v. Amoco Production Co., 95-1366, 95-1367 (La.App. 3 Cir. 10/9/96); 688 So.2d 1176.
The trial court found that there had never been a dispute between the Broussard and Ramsey ancestors in title as to the location of their boundary and that property rights, such as the cutting of timber, were exercised accordingly. The court also considered Fenstermaker's testimony that the controlling consideration for surveyors regarding property boundary questions is the intent of the parties. The trial court found that, if that was so, both Broussard and the Ramseys should have been consulted when Fenstermaker encountered a problem figuring out where the boundary was. Fenstermaker contacted neither. The court found that it was obvious that the parties themselves had no differences since they voluntarily signed a boundary agreement to help the oil companies understand what their acreage was. This finding is eminently correct: by the boundary agreement, the Ramseys conceded that they were being overpaid. The trial court found that the oil companies' reliance on the survey was unreasonable *1203 and that Broussard was entitled to damages, interest, and attorney's fees.
We have carefully examined the testimony and the exhibits. We agree with the trial court.
Fenstermaker's mistake was in locating Broussard's and Ramsey's common north corner. Resort to the mineral lease descriptions would have put this point 310 feet east of the forty line. He put it 210.15 feet east of the forty line.
Fenstermaker's testimony at trial revealed that he relied on property descriptions given to him by the oil companies. He admitted that descriptions of the Broussard tract found in the act of donation and the oil, gas, and mineral lease were not the ones he saw. The record does not indicate that Fenstermaker reviewed any Broussard description before he did the survey. He admitted that he used the Ramsey description alone in fixing the boundary to determine the division between the two tracts. Fenstermaker also admitted that the Broussard description in the mineral lease had no discrepancies whereas the Ramsey description he relied on did have discrepancies. The "point" that he had trouble finding using the Ramsey description was "a point three hundred and ten feet, (300.10) feet, east on a line southersouthern boundary of said two acre tract...." This was the exact description language in the Ramsey donation.
The appellants argue that because of this unclear language in the Ramsey description, Fenstermaker properly utilized a hierarchy of surveying protocol for resolving the conflict in boundary descriptions. They meant by this that he relied on monuments over distances. The argument is not at all supported by the facts. Fenstermaker did not rely on monuments. He testified that natural monuments are the number one thing that you rely on in property descriptions. However, he did not rely on natural monuments because, as he himself explained, the Ramsey description did not refer to any. The Ramsey description contained a reference to a two acre Crowell & Spencer Lumber Company tract, lying north of the Broussard tract. Working wholly from the Ramsey tract description, he placed the northwest corner of the Ramsey tract at the southeast corner of the lumber company tract. Ramsey's northwest corner and Broussard's northeast corner were common. The only survey in evidence of the Broussard property is the one prepared by Willis, and it reflects that the common corner of the Broussard and Ramsey tracts was 310 feet east of the northwest corner of the northwest quarter of the southwest quarter of Section 2, Township 1 South, Range 2 West, Rapides Parish. Fenstermaker's mistake was in putting the common corner only 210.15 feet east rather than 310 feet east of this forty line.
In his testimony, he said there was a flaw in the Ramsey description. Looking at the description, he testified:
A I think I have it right here. It says, "In a northwesterly direction to a point 310 feet and in parenthesis (300.10) feet east on a line on the line southern/southern boundary of said 2 acre tract."
Elsewhere in his testimony, Fenstermaker explained again:
A Um, in looking at the description, I mean, they had 310, they had 300.10, you know, potentially, it could have been 210 feet. You know, the whole thing was, you know, hard to, hard to map, so what, it also said it was on the southern boundary line of the 2 acre tract and that's where I went to, I went to the southeast corner of that said 2 acre tract.
The lumber company two acre tract, measuring 210.15 feet along its south line, lay north and contiguous to the Broussard tract. There was nothing in any property description and nothing on the ground to indicate that Broussard's northeast corner, Ramsey's northwest corner, and the lumber company's southeast corner were the *1204 same. To the contrary, Broussard's mineral lease (and all other descriptions in his chain) showed the point was 99.85 feet farther east than where Fenstermaker put it. The Ramsey description showed that the point (their northwest corner) was either 99.85 feet farther east, or 89.95 feet farther east, depending on whether the reader interpreted the Ramsey call to be 310 feet or 300.10 feet. We note alsoas can be seen from a close look at the above two quoted responsesthat Fenstermaker kept reading the Ramsey call as being "on the line southernsouthern boundary of said 2 acre tract" (emphasis supplied). The actual language in the Ramsey deed is "on a line southersouthern [sic] boundary of said 2 acre tract" (emphasis supplied). Although this language is imprecise by any standard, it is more reasonable to interpret the point as being on an extended line of the south boundary of the two acre tract, rather than on the line of the south boundary of the two acre tract, considering the actual language in the Ramsey deed. This is especially the more reasonable reading of the language when it is considered that both the Broussard and Ramsey descriptions place the point 310 feet east of the forty line instead of 210.15 feet. Fenstermaker admitted that it could be inferred from the Ramsey description that the point would be on an extended line on the southern boundary of the lumber company tract.
The lumber company tract was identified by artificial monuments which were pipes on all four corners. These monuments had nothing to do with the Broussard or Ramsey properties. Monuments, natural or artificial, were not mentioned in either the Broussard or Ramsey descriptions of their northern boundaries. Moreover, Fenstermaker was never even aware of the lumber company monuments until he discovered them after he had made his survey. When he went out there with Broussard he saw them. Fenstermaker had already determined that the eastern boundary of the Ramsey/Broussard tract would terminate on the southeast corner of the lumber company tract before he discovered these lumber company monuments.
Fenstermaker testified that in surveying protocol for making decisions regarding property boundaries natural and artificial monuments take precedence over other measures but "[t]he controlling consideration is the intention of the parties."[2] Obviously, "parties" would be the persons whose boundaries are affected. This testimony from Fenstermaker was elicited on direct examination by the oil companies' counsel. Fenstermaker's testimony as to his surveying protocol is not a rule of law this court is necessarily invoking for surveyors; it is the standard this surveyor announced was the one he followed. We are looking at the oil companies' defense from the standpoint of reasonableness.
We agree with the trial judge that their handling of the Broussard calculation was unreasonable. Not only did they not consult Ramsey, but they also failed in their initial calculation to consider the Broussard description for help in understanding the Ramsey discrepancies. We agree with the trial court that the oil companies acted unreasonably in continuing to rely on the survey when it was brought to their attention that a mistake had been made. Even after a boundary agreement was signed, which should have set the matter straight in everybody's mind, the oil companies still refused to pay Broussard the royalties he was entitled to from the date of production.
*1205 Going back to the No. 1 assignment of error, reliance on the public records, it is again obvious that the oil companies were not third parties, nor did they rely on the public records. In determining Broussard's acreage, the oil companies failed to consider the most important record of all, the Broussard mineral lease, to which they were parties, not third parties. Had the Broussard description been followed, Broussard would have had the exact 9.61 acres finally recognized. Had they relied on the public records, they would have seen the descriptions of the Broussard tract in the act of donation and the lease. Instead, Fenstermaker relied on the Ramsey tract description alone.
Although their assignment of error sounds like it, we cannot believe that the oil companies are seriously contending that recordation of the boundary agreement was the first public record on which they could rely for determination of the boundary. Broussard's acquisition of the property was recorded in the conveyance records of Rapides Parish. The suit record does not show whether the mineral lease was recorded or not, but the oil companies were bound to that description by the law of contracts, because they were parties to the mineral lease. We find no merit to this assignment.

FRIVOLOUS APPEAL
Broussard claims that the oil companies offered no testimony or evidence to contradict Broussard or his survey so that it must be concluded that the suspensive appeal is for the purpose of delay. He claims that he is entitled to damages for frivolous appeal. At the trial, the oil companies' testimonial evidence consisted entirely of their direct examination of Fenstermaker who had been called by Broussard on cross-examination. They introduced no exhibits.
Louisiana Code of Civil Procedure Article 2164 provides for an award of damages for frivolous appeal. Lack of merit to an appeal does not necessarily mean that the appeal is frivolous. Hershell Corp. v. Fireman's Fund Ins. Co., 98-1352 (La.App. 3 Cir. 6/2/99); 743 So.2d 698. "Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed." Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993). "Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.'" Id. (quoting Parker v. Interstate Life & Accident Ins. Co., 248 La. 449, 179 So.2d 634, 636-37 (1965)).
Considering all the facts of this case, the meager defenses presented at trial, and the appellants' arguments on appeal, we find that this appeal is so devoid of merit that it justifies the label frivolous. We grant an award of an additional $1,500 in attorney's fees as damages for a frivolous appeal.
For the above reasons, the judgment of the trial court is affirmed. Attorney's fees in the amount of $1,500 are awarded as damages for this frivolous appeal. Costs of this appeal are assessed to Union Pacific Resources Company and Oxy USA, Inc.
AFFIRMED; APPEAL FOUND FRIVOLOUS.
NOTES
[1] The oil companies neither paid the royalties nor responded in writing within 30 days. The oil companies apparently take the position that they were not required to respond in writing, stating in their brief before this court:

The record is ... abundantly clear that Broussard was aware of the basis of UPR's refusal to credit him with the additional acreage he claimed. Rather, the issue presented to and considered by the trial court was the reasonableness of UPR's reliance on the Fenstermaker survey in making its original royalty allocation decision.
Although we disagree that a written response was not required, we are jumping that issue, and deciding the case on the reasonableness issue, which is the way the case was presented at trial and on appeal.
[2] This protocol is recognized in Louisiana law. "Under our jurisprudence, it is well settled that the order of importance or value of the various calls which may be included in a description are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. However, the controlling consideration in any case is the intention of the party or parties." Kimbrough v. Hirsch, 98-967, p. 7 (La.App. 3 Cir. 2/3/99); 736 So.2d 871, 876-77.