820 So.2d 1240 (2002)
Rosa Mae Pelly LePRETTRE, et al.
v.
PROGRESSIVE LAND CORPORATION, et al.
No. 01-1660.
Court of Appeal of Louisiana, Third Circuit.
June 19, 2002.
*1242 Gary Evans Theall, Theall & Fontana, Abbeville, LA, for Plaintiffs/Appellees, Rosa Mae Pelly LePrettre, et al.
William Hugh Mouton, Lafayette, LA, for Defendants/Appellants, Progressive Land Corporation, Hampton F. Campbell, Timothy J. Campbell.
Paul Gonsoulin Moresi III, Attorney at Law, Abbeville, LA, for Defendant/Appellant, Vermilion Parish Police Jury.
Court composed of JOHN D. SAUNDERS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
GREMILLION, Judge.
This appeal stems from a boundary action filed by Rosa LePrettre, Donald Le-Prettre, James LePrettre, and Shelia Richard (the Plaintiffs) against Progressive Land Corporation, Hampton Campbell, Timothy Campbell, and the Vermillion *1243 Parish Police Jury (the Defendants). In this case, the Plaintiffs claim that the boundary to their property extends to the edge of a public road, while the Defendants claim that the boundary stops at a fence line which is a few feet away from the public road. The disputed area between the fence and the road consists of a large ditch. The Defendants have removed culverts from the ditch claiming that they own the ditch, thereby denying the Plaintiffs access to their property from the public road. In their petition, the Plaintiffs requested that the boundary be recognized at the edge of the road and that damages be awarded for mental anguish. After a trial on the merits, the trial court rendered a judgment which established the boundary at the edge of the public road and which denied the Plaintiffs any damages. As a result of the judgment, the parties have appealed. After reviewing the record, we affirm in part, amend in part, reverse in part and render, and remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
On December 11, 1939, Anna Kutsch Campbell executed an instrument by which she conveyed property to the Police Jury. Although it was entitled "Cash Deed," the language was altered to make it an act of donation, and no money was exchanged. The property was described as follows:
... does by these presents Donate, Grant, Bargain, Sell, Convey, Transfer, Assign, Set Over and Deliver, with all legal warranties....
The Western thirty (30) feet off a tract of land described as lot D of act of partition of property belonging to Estate of Marie Melanie Nunez, in Section 36, Twp 11S R 1 West; said strip being bounded on the West by land of Isaac Lyons, and measuring 3800 feet North and South, beginning at Shell Road on the South....
TO HAVE AND TO HOLD THE said described property herein conveyed, unto the said purchaser, heirs and assigns forever, with full and general warranty of title....
At the time, Anna owned an undivided one-half interest in the property and had a usufruct over the other undivided one-half interest. Melchoir Campbell, her son, was the naked owner of the other one-half interest. He did not actually sign the donation, but he witnessed his mother's signature. Thus, at a minimum, this instrument conveyed ownership of Anna's one-half undivided interest which she owned in full ownership. The Police Jury accepted the donation and constructed a public roadway on the land. The road, known as Campbell Road, has been maintained by the Police Jury ever since the donation. Although it is not heavily traveled, the road has been used by the public since its dedication.
At the same time, Isaac Lyons, the predecessor in title to the LePrettres, owned a thirty-foot strip of property to the west of the donated strip of road. To separate his property, he built a fence next to the road, with a ditch inside the fence. Shortly after the road was made public, he moved his fence across the ditch to grant the Police Jury access to the ditch for maintenance purposes. Since that time, the Police Jury has continuously maintained that ditch. In the years following, Lyons' property was conveyed to the Le-Prettre family, the present owners of the land.
Over the decades, several surveys were conducted on the land. In 1948, Hal White conducted a survey which placed the boundary along the road where the old fence line existed. On April 23, 1968, the Lyman survey was conducted which *1244 placed the boundary along the existing Lyons/LePrettre fence; the Campbell property was later partitioned in accordance with this survey. Then, in the 1990's, a survey was conducted by Joseph Schexnaider, which again placed the boundary on the old fence line in accordance with the Hal White survey.
In the mid-1990's, Rosa's husband died, and it became necessary for her to sell lots from her tract of land. Hence, on July 22, 1996, the LePrettres sold an acre of the property along Campbell Road to Richard. To access her property, she used an existing culvert, which had been placed in the ditch several years before by a farmer of the LePrettre property. On March 4, 1997, Richard had her acre surveyed by Schexnaider. Upon learning of the survey, Timothy removed the culvert, thereby blocking Richard's access to her land. At that point, the Campbell family and their corporation, Progressive Lands, Inc., asserted that they owned the strip of land between the road and the LePrettre property. Claiming to own the ditch, Timothy removed other culverts which had been installed years earlier by an oil company drilling on the LePrettre property and which were still being used by the LePrettre farmer. By removing the culverts, Campbell blocked the LePrettres' and Richard's access to their property.
As a result, the LePrettres and Richard filed this boundary action on March 11, 1997, against the Police Jury, Progressive Lands, Inc., and Timothy and Hampton Campbell requesting that the boundary be fixed and damages be awarded. In particular, the Plaintiffs sought damages for the unjustified harassment caused by the Defendants. All of the Defendants answered this action. During the course of the proceedings, the Police Jury filed a motion for summary judgment to dismiss itself as a party to the action; however, that motion was denied. Subsequently, the Plaintiffs and the Police Jury jointly stipulated that the Plaintiffs would not assert claims for damages or seek any monetary damage against the Police Jury.
After a trial on the merits, the trial court rendered a judgment dismissing the Plaintiffs' claims for damages and established the boundary in accordance with the Schexnaider survey. However, the judgment did not specifically state that the LePrettre property abutted Campbell Road.
As a result of the decision, both parties appeal, with the Plaintiffs claiming as error the trial court's failure to award damages for the intentional infliction of mental and emotional distress, for lost lot sales, for denying them access to the public road, and for the physical damages caused by Timothy; and its failure to rule explicitly that their property abuts Campbell Road for a distance of 3800 feet with access to Campbell Road. The Defendants allege that the trial court committed manifest error when it fixed the boundary according to the 1948 survey of Hal White, completely disregarding the construction, existence, maintenance and rebuilding of a fence on a rice levee with exclusive possession for over sixty years by each adjoining owner to the fence line.

LOCATION OF THE BOUNDARY
This court has consistently held that a trial court's determination of a boundary location is a finding of fact which will not be disturbed on appeal unless it is manifestly erroneous. Lamson Petroleum Co. v. Hallwood Petroleum, Inc., 99-1444 (La.App. 3 Cir. 5/24/00), 770 So.2d 786, writ denied, 00-2568 (La.11/27/00); 775 So.2d 448; see also Barker v. Quality Builders, Inc., 503 So.2d 1170 (La.App. 3 Cir.1987); Broussard v. Coleman, 479 So.2d 1016 (La.App. 3 Cir.1985), writ denied, *1245 481 So.2d 1354 (La.1986). In addition, where there is a conflict in testimony, the trial court should be given great discretion in making reasonable evaluations of the credibility of the witnesses and reasonable inferences based on the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lamson, 770 So.2d 786.
The trial court fixed the boundaries in accordance with the survey conducted by Schexnaider based on the Hal White survey. The Defendants do not allege that the trial court erred in fixing the original boundary between the respective tracts according to the survey evidence. Instead, they argue only that the strip of land between the fence and the road was acquired by acquisitive prescription because the fence has existed for sixty years. In particular, the Defendants argue that the partition of their property in accordance with the Lyman survey commenced acquisitive prescription in their favor. They assert that they have possessed the land to the fence by cutting the grass in the ditch and by allowing their cattle to graze there. In addition, they argue that, because they possessed part of the land encompassed in their title, they possess all of the property. We disagree.
First, the Defendants have never owned the disputed strip of property. The trial court ruled that the boundary existed where the old fence line was located in accordance with Schexnaider's survey, which was based on the Hal White survey. In making its determination, the trial court gave great credibility to Schexnaider's testimony and his work, along with the testimony of the independent witness, Francis Wiley Clark, who had lived in the area all of his life. In fact, he testified that he helped Lyons move the fence in 1939, and that Lyons moved the fence so that the Police Jury could maintain the ditch. He testified that Mr. Campbell, an ancestor to the Defendants, left a corner post of the old fence and put an iron rod in the ground to mark the original location of the fence and to preserve evidence of the boundary. Clark showed the iron marker to Schexnaider, who used it in reconstructing the original boundary. He testified that the disputed strip belonged to the LePrettre family. Upon review, we find that the trial court's determination of the boundary was correct.
Second, the Defendants argue that they acquired the property through acquisitive prescription. Specifically, they argue that thirty year acquisitive prescription commenced with the partitioning of the Campbell land in accordance with the Lyman survey; however, this argument is meritless. In Phillips v. Fisher, 93-928, p. 3 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307, writ denied, 94-0813 (La.5/6/94), 637 So.2d 1056 (citations omitted) (emphasis added), we summarized the law of adverse possession of thirty years acquisitive prescription:
Immovable property may be acquired through thirty years acquisitive prescription without good faith or just title. The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it. A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds. He must also prove that he intended to possess as owner, adverse to the actual owner, for the required thirty years.
Initially, we note that the Defendants have the burden of showing that their possession was actual, adverse, and corporeal, as well as continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds. In an attempt to meet *1246 their burden, the Defendants offered the testimony of Hampton Campbell, who testified that he cut the grass in the ditch several times; however, he was unable to produce any evidence to establish when, where, or how often he cut the grass. In fact, he admitted on cross-examination that he never mowed across the ditch. Also, Jacques Campbell testified that the Campbells had cattle on the property at times, yet he also testified that the cattle never went into or past the ditch. We conclude that the Defendants are unable to present sufficient evidence to show that they possessed the ditch and, therefore, they did not prove any of the requisite elements necessary to establish thirty years acquisitive prescription.
On the other hand, we find ample evidence to indicate that the Police Jury did maintain the road. In fact, in its answer to the Plaintiffs' petition, the Police Jury admitted to having maintained Campbell Road since 1939. Further, they acknowledged that their custody and control over the road included the surrounding land and ditches for maintenance. In addition, witnesses, including Clark, testified that the Police Jury maintained the road and ditches. Clark testified that the Police Jury kept up the road and ditches regularly since he was six or seven years old. Even Hampton admitted that the Police Jury maintained the road and possibly the ditch.
Finally, Louisiana law provides that a possessor claiming ownership by possession rather than by title must have uninterrupted possession with an intent to possess as owner. Prieto v. St. Tammany Homesites, Inc., 602 So.2d 1111 (La.App. 1 Cir.1992). However, possession is interrupted whenever there is a disturbance in fact. A disturbance in fact is any physical act which prevents the possessor from enjoying his immovable property quietly or which becomes an obstacle to that enjoyment. La.Code Civ.P. art. 3659.
Upon review of the record, the evidence overwhelmingly indicates that the Police Jury maintained the ditch, and there is no evidence to indicate that the Campbells possessed it. The fact that the Police Jury performed an act of maintenance on the roadway and ditch, and that persons acting on behalf of the LePrettres placed culverts in the ditch and used them throughout the years constitute disturbances in fact which would interrupt the running of prescription in favor of the Defendants. For all of the above reasons, the Defendants' assignment of error is without merit.

FRIVOLOUS APPEAL
Answering the appeal, the Plaintiffs argue that we should assess damages against the Defendants for filing a frivolous appeal. In particular, the Plaintiffs assert that the Defendants filed this meritless appeal in an attempt to delay the LePrettres from selling more lots and as harassment for not selling the land to them.
Rule 2-19 of the Uniform RulesCourts of Appeal provides, "The court may award damages for frivolous appeal in civil cases as provided by law." Damages for a frivolous appeal are awarded pursuant to La.Code Civ.P. art. 2164, which states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
However, an appeal is not automatically deemed frivolous simply because it lacks *1247 merit. Broussard v. Union Pacific Res. Co., 00-1079 (La.App. 3 Cir. 1/31/01), 778 So.2d 1199, writ denied 01-0589 (La.4/27/01), 791 So.2d 118, citing Hershell Corp. v. Fireman's Fund Ins. Co., 98-1352 (La.App. 3 Cir. 6/2/99), 743 So.2d 698, writ denied, 99-1923 (La.9/17/99), 747 So.2d 568. But, we recognize that "[d]amages for frivolous appeal are allowed when `it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.'" Broussard, 778 So.2d at 1205, quoting Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993); Parker v. Interstate Life & Acc. Ins. Co., 248 La. 449, 456, 179 So.2d 634, 636 (1965).
The Plaintiffs claim that the Defendants have taken this appeal solely for the purpose of delay. We note that all appeals result in delay and that many appeals lack merit. Such is obviously the case here. However, we find that this appeal is not frivolous. The Defendants relied on the Lyman survey in pressing their case. There also existed a unique question of law as to whether the Defendants could acquire property by acquisitive prescription in the face of the fact that the Police Jury was maintaining the property. Finally, the trial court did not award damages, which caused the Plaintiffs to file an appeal, which also resulted in delay even though it is partially meritorious. Accordingly, we cannot say that this appeal was taken solely for delay or that counsel was not sincere in the view of the law which he advocated. This assignment of error lacks merit.

DAMAGES
In their second assignment of error, the Plaintiffs assert that the trial court erred in failing to award damages to the Plaintiffs for the intentional infliction of mental and emotional distress, for lost lot sales, for denying them access to the public road, and for the physical damages caused by Timothy. We shall address each item of damages separately.

Lost Sales of Property
A Notice of Pendency of Action was filed by the Defendants with the Vermillion Parish Clerk of Court, which prevented the Plaintiffs from selling any of their property while the action was pending. Rosa testified that, as a result of not being able to sell the land, she lost three sales for the property. She said that she could have sold two fifteen-acre tracts and a four-acre tract of land. Although her family had agreed to a selling price of $4,000.00 per acre, Rosa testified that she had never discussed a price with the potential buyers. She also said that these sales were now lost because the prospective buyers had either bought other property or changed their mind regarding the property.
While it is apparent from the record that the Defendants have pursued this litigation for the purpose of delaying the sale of the land and were motivated to prevent the sale of the land to anyone else, we cannot find that damages for loss of sale of the land exist in this instance. In order to recover damages, a plaintiff must prove any element of damage by a preponderance of the evidence. Damages based on mere speculation or conjecture are not allowed. Pierce v. Milford, 96-92 (La. App. 3 Cir. 9/25/95), 688 So.2d 1093, 1102. First, we note that the Plaintiffs still own the land. Additionally, there was no evidence that the land has diminished in value since the loss of these sales. Further, there was no evidence to show any other loss on the part of the Plaintiffs, such as loss on income from interest because of the loss of sale revenue from the property. Accordingly, the trial court's judgment denying *1248 damages for the lost sales of the property is affirmed.

Trespass and Mental Anguish
In Harrington v. Abshire, 98-1651, 98-1652, pp. 8-9 (La.App. 3 Cir. 3/31/99), 732 So.2d 677, 682, we wrote:
In an action for trespass, it is incumbent upon the plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. Bell v. Sediment Removers, Inc., 479 So.2d 1078 (La.App. 3 Cir. 1985), writ denied, 481 So.2d 1350 (La. 1986). The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. Id. One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986). Mental anguish does not result of necessity from a trespass or the encroachment on a person's property; even though mental anguish may be compensable, it must be proven with sufficient evidence. Bell, 479 So.2d 1078. However, mental anguish does not require proof that medical or psychiatric care was required as a result of the incident, but minimal worry and inconvenience should not be compensated. Phillips v. Town of Many, 538 So.2d 745 (La.App. 3 Cir.1989).
Upon review, we note that Timothy testified that he completely removed the Richard culvert and partially removed the LePrettre culverts from the ditch to prevent access to the Richard/LePrettre lands. Timothy's conduct in removing the culverts was despicable and outrageous. Instead of using appropriate legal injunctive remedies, he took matters into his own hands. As such, we recognize that Timothy did commit acts of trespass, his acts were intentional, and the Defendants are responsible for the damages caused by his acts.
Because there is no evidence in the record to indicate that value of the culverts, this case is remanded to the trial court strictly for the purpose of determining the value of the culverts and the costs necessary to replace them. Then, Richard shall be reimbursed damages for her culvert, and the LePrettres shall be reimbursed damages for their culverts.
As we have noted, a party wronged by trespass is entitled to recover general damages, including damages for mental anguish. Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.4/13/99), 731 So.2d 240. Although the Plaintiffs collectively request mental anguish damages, there is little evidence to establish mental anguish awards for Donald and James or Richard; accordingly we cannot say the trial court committed error in failing to award them damages for mental anguish.
Nor do we find sufficient evidence in the record to allow us to reverse the trial court's finding denying Rosa damages for mental anguish. Rosa, who was born in 1922, testified that she was selling the land to supplement her $550 a month Social Security income and was depending on this money. When asked about the effect the Campbell's actions had on her life, she stated that it had placed added stress on her, but that she did not let it overly influence her life. She added that she had tried not to pay much attention to the "ditch problem," because she was busy caring for her elderly mother. Rosa admitted that she not seek any medical care as a result of this stress, stating that "I didn't let it get that far. I'm sure it affected my general health because stress does affect your health, but the health *1249 problems I have I don't blame it on the lawsuit." Considering the evidence or lack thereof presented on the issue of mental anguish, we cannot say that the trial court erred in denying damages to the Plaintiffs on this issue. Rosell, 549 So.2d 840.

MODIFICATION OF JUDGMENT
In accordance with Article 2164, which authorizes the appellate court to render any judgment which is just, legal, and proper, we will amend the judgment to more specifically define the boundaries. In the interest of justice, and in an attempt to prevent further litigation, we amend the judgment to reflect that the LePrettre and Richard properties abut Campbell Road for a distance of 3800 feet, thereby granting the Plaintiffs access to the road.

DECREE
For the above reasons, the judgment is affirmed in part, amended in part, reversed and rendered in part, and remanded. The setting of the boundary in accordance with the Schexnaider survey is affirmed. The judgment is amended to further state that the Plaintiffs' property abuts Campbell Road. The denial of damages by the trial court to the Plaintiffs for trespass is reversed, and judgment is rendered awarding the them the value and replacement costs of the culverts. The trial court's judgment denying all other damages, including damages for frivolous appeal, is affirmed. The case is remanded only for the purpose of determining the value of and the costs of replacing the culverts. All costs of this appeal are assessed to the Defendants.
AFFIRMED IN PART; AMENDED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED.
SAUNDERS, J., affirms in part and dissents in part and assigns written reasons.
SAUNDERS, Judge, affirming in part and dissenting in part.
Although I agree with parts of the majority opinion, I would award damages for a frivolous appeal, loss sales, and mental anguish.

FRIVOLOUS APPEAL
Considering the facts of this case and the arguments presented by the Defendants, I believe that this appeal is so devoid of serious merit that damages for a frivolous appeal are warranted. Upon review of the record, I note that even the trial judge questioned the motivation of the Defendants during the trial. He asked the independent witness, Mr. Clark, the following questions:
Q. Can you tell me what this dispute is about in your own words? Why don't you speak into the microphone?
R. I'd rather not get into that.
Q. Well, no. I'm asking the question though is, and I realizeand I don't want to put [you] in the middle of a dispute, but I just need to know from you what your understanding is of the dispute I'm asking the question though is, and I realize and I don't want to put [you] in the middle of a dispute, but I just need to know from you what your understanding is of the dispute between them. Without you taking sides one way or the other, just tell me what your understanding is....
R. Okay. Well, they wanted to buy the land
Q. I'm sorry.
R. When Mr. LePrettre died, Mrs. Le-Prettre was putting the land up for *1250 sale and they wanted to buy it and
Q. Who wanted to buy it?
R. The Campbells.
Q. All right.
R. And she told them they didn't offer enough money, so she said "no" and then they got mad. That's as far as I know.
Q. All right. But I guess myI didn't state my question properly. What are they arguing about with regards to that road?
R. I don't know.
Q. All right. You said that
R. They don't want them to go in there. They don't want them to sell the property to nobody.
Similarly, Mrs. LePrettre testified that the Campbells spoke to her twice about purchasing the land soon after her husband died but that they could not reach an agreement. In fact, the Campbells also testified that they did speak to her about purchasing property. It is important to note it was shortly after the Campbells learned of Mrs. LePrettres' sale of one of the lots to Richard that Timothy Campbell began removing the culverts and causing trouble for the Plaintiffs.
The majority has characterized the behavior of Timothy Campbell in removing the culverts as "despicable and outrageous." I agree with this characterization, but I suggest that it is somewhat mild. The use of force to prevent an elderly woman from exercising her legal rights is, in my view, nothing short of "barbaric." The fact that this illegal act and the subsequent baseless appeal have prevented this lady from selling her land for more than five years, in my view, cries out for serious sanctions.
The majority, in finding that damages for a frivolous appeal are not warranted, state the following:
The Defendants relied on the Lyman survey in pressing their case. There also existed a unique question of law as to whether the Defendants could acquire property by acquisitive prescription in the face of the fact that the Police Jury was maintaining the property. Finally, the trial court did not award damages, which caused the Plaintiff to file an appeal, which also resulted in delay even though it is meritorious.
The first point is not well taken. The Defendants did not rely on the Lyman survey in pressing the case on appeal. The Lyman survey was so devoid of merit that it could not form the basis of even a frivolous appeal and that was abandoned by the Defendant on appeal in favor of its claim of "acquisitive prescription." Accordingly, the first "justification" for this appeal must fall as the Defendant did not base its appeal on the Lyman survey.
The second "justification" for the appeal is acquisitive prescription. The Defendant's claim of acquisitive prescription is based upon his cows having grazed in the ditch of several occasions. The majority characterizes this argument as "unique." I contend that it is unique, but I suggest that its "uniqueness" is founded in its total futility rather than in legal merit and that it only emphasizes the frivolous nature of this appeal.
Finally, the third "justification" found for this appeal is that the Plaintiff also had to appeal and so delay was inevitable. The fallacy here is that the Defendant had filed a Notice of Pendency of Action in the mortgage records which remained in effect during this appeal and continues to prevent the Plaintiff from selling property. The Plaintiff's appeal does not prevent her from selling the property. Hence, for the *1251 above reasons, I find the reasoning of the majority to be flawed.
There are some similarities in this case and that of Broussard v. Union Pacific Resources Co., 00-1079 (La.App. 3 Cir. 1/31/01); 778 So.2d 1199. Both cases involve boundary disputes in which the defendants had an erroneous survey and strained legal theories. The major difference is that the defendant in Broussard was merely indifferent to its legal duty and failed to pay royalties properly while the Defendant in the case had acted illegally and maliciously. Moreover, Campbell has achieved his desire of preventing LePrettre from selling her property for more than five years. Damages for a frivolous appeal were properly granted in Broussard and should be granted in the present case.

DAMAGES FOR LOSS OF PROPERTY SALES
The record indicated that the LePrettres could not sell any property during the litigation process. On direct exam, Rosa LePrettre testified to the problems she has endured as a result of the litigation. She testified as follows:
Q. As a result of this lawsuit, have you lost any sales of property?
R. Yes, I have. I had two sales lined up for two (2) fifteen (15) acre tracts which would have taken a pretty big bite out of that piece of land, but both of those sales went because they couldn't wait this long to get the property. One man already built his new home and moved in and the other changed his mind. He's decided not to buy right now. And then I had a four (4) acre piece that they've already bought something else and built.... But these three (3) I knew had fallen through, two (2) fifteen (15) acre pieces and the four (4) acre piece.
Q. Has a price been arrived at on any of those pieces?
R. Approximately Four Thousand Dollars ($4,000.00) an acre.
Having determined that the Defendants have pursued this litigation for the purpose of delaying the sales of the land and were motivated to prevent the sale of the land to anyone else, I believe that damages are necessary to compensate the LePrettres for the lost of a chance to sell their land.
The Louisiana Supreme Court has determined that lost of a chance is actionable. In Smith v. State, Department of Health and Hospitals, 95-0038, p. 6 (La.6/25/96); 676 So.2d 543, 547, the court recognized that damages for loss of a chance of survival are available where "the tort victim had a chance of survival at the time of the professional negligence and ... the tortfeasor's action or inaction deprived the victim of all or part of that chance." Further the court determined:
[T]he method we adopt today in this decision, is for the factfinderjudge or juryto focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages.
Id. p. 7; at 547.
In the present case, the Plaintiff had a very real "chance" to sell her property. Because of the Defendant's outrageous conduct in continuing this litigation, the LePrettres have lost the chance, opportunity, and ability to sell their land. This is land that Ms. LePrettre was relying on as part of her income to supplement her social security in her golden years. Five *1252 years have passed in which she has been completely deprived of this source of supplementation.
Like loss of a chance of survival, loss of a chance to sell property is distinct compensable injury, and a lump sum should be awarded based on the evidence in the record. Based on Ms. LePrettre's testimony, she lost at three sales over the years. At $4,000.00 an acre, the LePrettres could have received $76,000.00 for the nineteen acre tract and $16,000.00 for the four acre tract. In my view, a substantial award is justified and should be granted.

DAMAGES FOR MENTAL ANGUISH
Finally, I disagree with the majority's findings that Rosa LePrettre is not entitled to damages for mental anguish. There is ample evidence in the record which shows that Mrs. LePrettre suffered mental anguish. Mrs. LePrettre, who was born in 1922, testified that she was selling the land to supplement her $550.00 a month Social Security income and was depending on this money. She acknowledged that it has put added stress on her life and has affected her health. Considering the outrageousness of the Defendants' conduct and the effects the conduct has had on this eighty-year-old woman, I believe that Mrs. LePrettre is entitled to damages for mental anguish.
In Johnson v. First National Bank of Shreveport, 00-870 (La.App. 3 Cir. 6/20/01); 792 So.2d 33, writ denied 01-2770 (La.1/4/02); 805 So.2d 212, the lower court awarded Mr. Johnson damages for mental anguish after suffering from the extreme behavior of a bank vice president who exercised managerial control over Mr. Johnson's cattle operations and engaged in self dealing. We awarded $150,000.00 to the Plaintiff for mental anguish damages which was subsequently upheld by the Louisiana Supreme Court. In comparing Johnson to the instant case, several similarities are apparent. First, Mr. Johnson suffered stress related ailments caused by the outrageous behavior of the defendant. Second, Johnson was subjected to this extreme behavior over an extended period of time. Third, he did not seek medical treatment. In the instant case, Rosa Mae LePrettre has been subjected to the extreme behavior of the Defendants for over five years and has continued to suffer physically and mentally because of the stress. She has not sought medical attention; however, medical treatment is not a requirement to recover damages for mental anguish. Id. When a person is subjected to such extreme behavior over an extended period of time, there is a reasonable expectation that a person would suffer substantial mental distress. As such, I would award substantial damages for mental anguish.