WHIPPLE, C.J.,
dissenting.
| )An authentic act in Louisiana is presumed to be valid, and this presumption is established in the interest of public order, to maintain peace among men and to prevent contestations concerning the proof or evidence of their conventions. One seeking to invalidate an apparently authentic act must present strong and convincing proof of such magnitude as to overcome the presumption of verity of notarial acts. Meltzer v. Meltzer, 95-0551, 95-0552 (La. App. 4th Cir. 9/28/95), 662 So.2d 58, 61, writ denied, 95-2616 (La.1/5/96), 666 So.2d 293.
Accordingly, the issue currently before us is whether the evidence presented by Mr. Eschete constitutes strong and convincing proof that he did not sign the act of donation “before a notary public” and “in the presence of two witnesses,” as contemplated by LSA-C.C. art. 1833. I find that Mr. Eschete failed to satisfy this required high burden of proof and, therefore, I respectfully dissent from the majority herein.
In Hardin v. Williams, 468 So.2d 1302 (La.App. 1st Cir.), affd by, 478 So.2d 1214 (La.1985), this Court addressed the meaning of “before a notary public” and “in the presence of two witnesses.” In Hardin, the notary testified that he did not see either the witnesses or the donor sign the act of donation; rather, the draftsman brought the document out for the notary to sign and the draftsman represented that he witnessed the donor’s and witnesses’ signatures to the act in an adjoining room. This Court found that the act of donation was null and void because the requirements of an authentic act were not complied with. Specifically, this Court stated, “We hold, as a matter of law, that unless the notary and attesting | ¿witnesses are able to visually observe each other and the donor during the execution of the act of donation inter vivos, the instrument is not entitled to the status of authentic act.” Hardin, 468 So.2d at 1304. (Emphasis added).
Unlike the facts in Hardin, the notary and witnesses in this case all testified that they saw, i.e., “visually observed,” Mr. Es- *990 chete sign the document. Ms. Robichaux readily admitted that she was on the telephone in Ms. Bourgeois’ office when Mr. Eschete signed the act of donation, and Ms. Smith readily admitted that she was making copies at a copy machine in Ms. Bourgeois’ office area when Mr. Eschete signed the document. However, Ms. Robi-chaux and Ms. Smith also provided lengthy explanations as to the law office layout, noting, in particular, the small size of the office area and the fact that they were able to see Mr. Eschete sign the document despite being engaged with another task in the area adjoining the area where he was signing. Ms. Robichaux, Ms, Smith, and Ms. Bourgeois testified that Ms. Bourgeois’s desk area is adjacent to the waiting room, that the door was open between the waiting room and desk area, and that someone at the desk area could see into the waiting room. Further, there was testimony that Ms. Robichaux’s office policy is that she keeps the door open between the desk area and the waiting room when an opposing party who is not represented by counsel, such as Mr. Eschete, comes to the law office. Notably, the distance between the desk area and the furthest point in the waiting room was measured on the morning of the trial, and the total distance was shown to be only twelve (12) feet. Under these circumstances, I am unable to find that Mr. Eschete, who undisputedly signed the act, nonetheless established, by “strong and convincing proof’ that the act was signed outside the presence of the notary and the witnesses.
Instead, the testimony and the record show that the notary and the two witnesses visually observed Mr. Eschete when he signed the act of donation. The only evidence offered to dispute the notary and two witnesses’ testimony that they 13saw Mr. Eschete execute the document was the self-serving testimony of Mr. Es-chete. Given the burden imposed on him as the party challenging his authentic act, I am unable to find, as a matter of law, that Mr. Eschete’s testimony alone is sufficient to overcome the strong presumption of validity of the authentic act.[1] Therefore, I respectfully disagree from the majority and find that the trial court erred in concluding that the act of donation was null and void for failure to meet the requirements of LSA-C.C. art. 1833.
Moreover, I also find that the trial court erred in declaring the act of donation null and void for failing to meet the requirements of LSA-C.C. art. 1747.[2] Louisiana Civil Code article 1747 adds additional requirements for executing inter vivos inter-spousal donations, stating that such acts must state that the donor makes the donation in contemplation of his prospective marriage or in consideration of his present marriage, as the case may be, and shall be signed at the same time and at the same place by the donor and by the donee.
All parties herein agree that the act of donation was not signed at the same time by Mr. and Ms. Eschete. Nevertheless, I question whether the subject act of donation is even governed by LSA-C.C. art. 1747. Also, assuming this act of donation is subject to the additional requirements of LSA-C.C. art. 1747, I do not find that the *991 failure to meet said requirements renders the act of donation null and void. Article 1747 must be read in conjunction with the other code articles in the Civil Code chapter governing inter vivos interspousal donations, including, specifically, LSA-C.C. art. 1744, which provides in pertinent part:
A donation inter vivos by a person to his future or present spouse in contemplation of or in consideration of their marriage that is not |4made in accordance with the provisions of this Chapter shall be governed solely by the rules applicable to donations inter vivos in general. (Emphasis added)
Accordingly, in my view, the subject act of donation is not null and void for failure to meet the additional requirements of LSA-C.C. art. 1747, given that the act of donation is valid under - LSA-C.C. art. 1838, the code article which generally governs authentic act requirements for inter vivos donations.
For the foregoing reasons, I respectfully dissent.

. In so concluding, I again note that Mr. Eschete does not dispute that he signed the act of donation. I find the following statement, albeit contained in the dissenting opinion in American Bank & Trust Co. in Monroe v. Carson Homes, Inc., 316 So.2d 732, 736 (La.1975) to be persuasive, as follows: "The party executing the acts made a judicial acknowledgment that the acts were his. Juridical acts can not be more authentic than are these.”

. Upon concluding that the act of donation was invalid under LSA-C.C. art. 1833, the majority pretermitted consideration of this issue.